Neil **HAYSMAN**, Plaintiff,

v.

**FOOD LION, INC.** Defendant.

Civ. A. No. 494–175.

United States District Court,
S.D. Georgia,
Savannah Division.

July 18, 1995.

Noble Louis Boykin, Jr., Jones, Boykin & Associates, Savannah, GA, for plaintiff.

Charles M. Dalziel, Jr., Daniel N. Meyer, Atlanta, GA, for defendant.

Kirby Clarice Gould, Lee Carter Mundell, Hunter, Maclean, Exley & Dunn, Savannah, GA, for interested party.

## ORDER

EDENFIELD, Chief Judge.

Plaintiff Haysman brought suit against Defendant Food Lion for discrimination on the basis of disability, intentional infliction of emotional distress, and battery. Food Lion moves for summary judgment on the disability claims, arguing that Haysman does not meet the requirements of the ADA or the Georgia Equal Employment for the Handi-

capped Code (GEEHC). Food Lion moves for summary judgment on the emotional distress and battery claims, arguing that if Haysman was battered or emotionally abused by a Food Lion employee, that employee either acted outside the scope of his employment and cannot bind Food Lion, or acted in the course of his employment and workers' compensation is the plaintiff's exclusive remedy. For the reasons discussed below, Food Lion's motion on the disability claims is granted in part and denied in part, and Food Lion's motion on the intentional tort claims is granted.

## I. Background

As this case is before the Court on Food Lion's motion for summary judgment, the facts stated are either undisputed or cast in a light most favorable to the Plaintiff Haysman.

Haysman was hired by Food Lion as an assistant store manager in September, 1989. About four months later, on January 3, 1990, Haysman suffered an on the job injury when a pallet fell and struck him, injuring his knee and back. Subsequently, Haysman underwent knee surgery and a laminectomy to remove disc material in his back.

According to Haysman's neurologist, Dr. William Clary, M.D., Haysman was then limited to sedentary work, with indefinite and possibly permanent lifting restrictions of 10–15 pounds. (Clary Deposition at 32, 45). Additionally, Haysman has limitations on his ability to walk for distances, bending, standing and sitting. According to Dr. Clary, Haysman can sit for a maximum of sixty minutes, stand for a maximum of thirty minutes, and walk continuously for only three minutes. (Clary Deposition at 45). Dr. Clary gave Haysman a permanent disability rating of 7% based on the injury to his back. (Clary deposition at 47).

According to Dr. William Dickinson, Haysman's psychologist, Haysman also suffers from a pre-existing emotional disorder which was aggravated by the accident. (Dickinson Affidavit ¶ 10). Dr. Dickinson began treating Haysman on January 22, 1992, and initially diagnosed him as suffering from Post Traumatic Stress Disorder, depression and somatization. (*Id.* at ¶ 8). Dr. Dickinson opines that Haysman is impaired with regard to certain psychological functions, including: thinking, perception, judgment, affect and behavior. Additionally, Haysman had trouble sleeping and had nightmares during the time period covered in his complaint. (*Id.* at ¶ 6, 26). Dr. Dickinson gives Haysman a 20% permanent partial disability rating based on the above psychological factors. (*Id.* at ¶ 21).

Following the January 1990 accident, Haysman was out of work until May 18, 1992, collecting workers' compensation benefits for temporary total disability. On May 18, 1992, Haysman returned to work for Food Lion in a temporary light duty job created especially for him and within the restrictions established by his doctors. Initially, Haysman was to work no more than 5 hours per day and 20 hours per week, and would not be required to lift more than 10 pounds. The position created for Haysman required him to do various things such as greet customers and dust shelves. This position was not a management level job as Haysman's previous assistant manager position had been. Food Lion continued to pay partial workers' compensation benefits after Haysman's return in order to make up the difference between his salary before and after his return to work.

Over the next 18 months the situation between Haysman and Food Lion was not a pleasant one. Since the parties agree that Dr. Dickinson's records are a reliable memorial of Haysman's version of events, (Haysman Deposition at 83–84, Defendant's Brief at 13), we will quote from those records extensively in setting forth the factual background and chronology of Haysman's unhappy relationship with Food Lion.

From the outset, Haysman was apprehensive concerning his return to work and found this return difficult. After his first few days of work he told Dr. Dickinson that his new duties were causing him pain, that he could not stand for 20 minutes without screaming, and that he would like to be put back on disability and to begin a vocational rehabilitation program in order to teach him a trade which he could do more effectively. (Defen-

dant's exhibit B—Dr. Dickinson's Affidavit & accompanying records at 44–47).

In June 1992, Haysman told Dr. Dickinson that Food Lion had him doing "more than he should be doing", thus increasing his pain, and that he wanted to stop working because the pain was too much for him. (*Id.* at 50–51). When Food Lion and Haysman's doctors attempted to increase Haysman's hours to 25 per week, he told Dr. Dickinson that he could not work the extra 5 hours per week. (*Id.* at 53). In July 1992, Haysman indicated to Dr. Dickinson that he could not work 20 hours per week, (much less 25), and that he was not getting along with people at work. (*Id.* at 56). In August 1992, after falling out of a chair at work, Haysman told Dr. Dickinson that working 5 hours per day was "hell." (*Id.* at 62). Throughout the fall of 1992, Haysman claims he was still unable to consistently work the hours scheduled for him and allowed by his physicians. In September 1992, Haysman expressed to Dr. Dickinson a desire to explore other occupational alternatives, because he felt that he needed to "make a better living and work full time." (*Id.* at 63–64).

In January 1993, Haysman told Dr. Dickinson that he had only been putting in 10–15 hours over the last several weeks and that he had yet to be able to put in the 25 hours then authorized by Dr. Clary. (*Id.* at 75). However, by late January 1993 Haysman had gradually progressed to the point where he was able to do some light stocking of paper products and began to feel better about work. (*Id.* at 76). Haysman was able to increase the hours he actually worked to 25 per week, even though he was still suffering from pain. (*Id.* at 81). Around this time Haysman approached his supervisors about a "strengthening program" and working his way back to full-time employment and his former assistant manager position. (*Id.* at 77). Haysman alleges that it was also about this time that the friction between he and his supervisors increased and that his fellow employees began to ridicule him concerning his chances of returning to management. (*Id.* at 79–80, Haysman Deposition 57–72).

Haysman's relationship with his supervisors and co-workers continued to deteriorate over the next few months. Haysman alleges that in April 1993 the store manager, Doug Gertzweiler, berated him in front of other employees. (Haysman deposition at 67–68). During this time Gertzweiler accused Haysman of "snowballing" the company with his disability. (Gertzweiler Deposition at 48). The assistant manager, Robert Reynolds, told Haysman that he "would break him" and was going to "ride him" until he quit. (Haysman Deposition at 168–170, Harris Deposition at 24). Haysman also claims that Reynolds told him to work every minute of his shift regardless of whether he was hurting. (Haysman Deposition at 159). Haysman alleges that he was further harassed because his hours were changed to the night shift, even though his job as a greeter could be done at any time since it was not a regularly scheduled position. He alleges that Reynolds used rather extreme profanity towards him (the specifics are omitted here, but are available in vivid detail in Haysman's Deposition). (*Id.* at 132, 137–144, 149, 213). However, there are no witnesses to the alleged profanity. Haysman also alleges that Reynolds would strike or kick him on injured portions of his body when he would walk by. (*Id.* at 86–93). However, there are also no witnesses to the alleged battery, nor is there any physical or medical evidence of such, nor has Haysman alleged any physical injury resulting from such battery. Haysman did not report these allegations of physical abuse to anyone at Food Lion.

Food Lion does not deny that friction developed between Haysman and his supervisors, although they do deny many of the specific incidents alleged. Haysman's supervisors apparently doubted that Haysman was injured to the extent that he claimed. The store manager, Mr. Gertzweiler, stated that Haysman was "so called hurt," (Gertzweiler Deposition at 50), and that he did not want to hear what Haysman's psychologist had to say, (*id.* at 50–51), and that he thought Haysman was a "joke," (*id.* at 53), and that he did not always believe that Haysman was hurting when Haysman said that he was. (*Id.* at 46). However, Gertzweiler never inquired of Food Lion as to Haysman's medical status or records. (*Id.* at 46, 48–50).

Dr. Dickinson is of the opinion that this alleged harassment exacerbated Haysman's psychological problems and symptoms. He states that Haysman's symptoms worsened over the spring and early summer of 1993 and he attributes this to what he believed was harassment by Haysman's supervisors. (Dickinson Affidavit at ¶ 32–40). Finally, on November 3, 1993, Dr. Dickinson totally disabled Haysman from working at Food Lion because of Haysman's deteriorating mental and emotional state and what Dr. Dickinson perceived to be on the job harassment by Haysman's supervisors. (*Id.* at ¶ 50). Food Lion again commenced paying workers' compensation benefits to Haysman. (Haysman Deposition at 75–76). Haysman was never officially discharged by Food Lion. Dr. Dickinson states that Haysman's symptoms improved after he left Food Lion.

Since September 1994 Haysman has been working at Lottie's Shoes as a salesperson. He works approximately 30 hours per week and states that he could work more if the hours were available. (Haysman Affidavit ¶ 11).

## II. Summary Judgment Standard

Summary judgment is appropriate only if the available evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the parties' factual statements conflict or inferences are required, the Court will construe the facts in a light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987). If the movant makes a sufficient showing, then the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A dispute of fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A mere "scintilla" of evidence does not suffice to support the nonmovant's position. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the nonmovant's response consists of noth-

ing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). The Court will not weigh conflicting evidence or make credibility determinations, *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14, but where the nonmovant's evidence is insufficient to allow a reasonable jury to return a verdict in its favor, or is merely colorable or not significantly probative, then the movant is entitled to summary judgment. *Id.* at 249, 106 S.Ct. at 2510–11.

When the movant does not have the burden of persuasion on an issue, he may prevail on summary judgment by showing that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

## III. ADA Claim

The American's with Disabilities Act (ADA) prohibits employers from discriminating against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112. A "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the position that the individual holds or desires. 42 U.S.C. § 12111(8).

Thus, under the ADA a plaintiff makes out a prima facie case by showing: (1) that he has a disability recognized under the ADA, (2) that he is "qualified", that is, with or without reasonable accommodation (which he must describe) he can perform the essential functions of the job sought or held, and (3) that he was discriminated against because of his disability. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995).

Discrimination may include failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A); *Larkins v.*

*CIBA Vision Corp.,* 858 F.Supp. 1572, 1579 (N.D.Ga.1994). It is this type of discrimination that Haysman alleges here. As with discrimination cases generally, an ADA plaintiff bears the ultimate burden of persuasion that he is the victim of the alleged discrimination. *White,* 45 F.3d at 361.

Haysman claims that Food Lion violated the ADA because he is a "qualified individual with a disability" and Food Lion failed to reasonably accommodate him when they: (1) refused to return him to his former position as assistant manager, (2) refused to transfer him to another full time position which he could have performed, and (3) failed to reasonably accommodate him in his light duty job because they harassed and abused him in an attempt to force him to quit his job with the store.

Food Lion seeks summary judgment on the grounds that Haysman is not a "qualifying individual with a disability" pursuant to the ADA, and thus, not entitled to ADA protection. They seek to establish that Haysman does not qualify as "disabled" under the ADA, and/or that he is not a "qualifying individual with a disability" because he cannot perform the essential functions of the jobs in questions.

There is no dispute that Food Lion refused to place Haysman back in a management position because of his physical limitations. The questions here with respect to the management positions are: (1) whether Haysman's limitations amount to a disability under the ADA and, if so, (2) whether Haysman was a "qualified individual" for the positions in question.

## A. Haysman's Disability

■ The Court finds that a material question of fact exists as to whether Haysman has a "disability" under the ADA. An individual has a disability under the ADA if the person: (1) has a physical or mental impairment that substantially limits a major life activity, or (2) has a record of such impairment, or (3) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g).

The terms physical or mental impairment include, (1) any physiological disorder or con-

dition affecting, as is applicable here, the body's musculoskeletal or neurological systems, or (2) any mental or psychological disorder including, as is applicable here, emotional or mental illness. 29 C.F.R. § 1630.2(h). An impairment rises to the level of a disability when it substantially limits one of the individuals major life activities. 29 C.F.R. Pt. 1630, App. § 1630.2(j). Multiple impairments that combine to limit an individual's major life activities also constitute a disability. *Id.*

Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty. 29 C.F.R. Pt. 1630, App. § 1630.2(i). They may include functions such as performing manual tasks, walking, working, sitting, standing and lifting. *Id.* A person is substantially limited in these activities if, as compared to an average person in the general population, he is significantly restricted as to the condition, manner or duration under which he can perform a major life activity. 29 C.F.R. § 1630.2(j).

Haysman submits evidence sufficient to establish a material question of fact as to whether he is substantially limited in a major life activity. Specifically, in accordance with 29 C.F.R.App. § 1630.2(i), there is evidence that Haysman is significantly restricted in his ability to lift, stand and walk, as compared to the general population. It is undisputed that Haysman can lift no more than 10–15 pounds, and Dr. Clary states that Haysman can stand for only 30 minutes and walk continuously for only 3 minutes. (Clary Deposition at 44–46). Further, there is evidence that Haysman's emotional and mental problems limit his thinking and perception (Dr. Dickinson Affidavit). Based on EEOC guidelines a reasonable jury could find that Haysman has physical and/or mental impairments which substantially limit one or more of his major life activities.

■ Further, there is evidence that Haysman may be substantially limited in the major life activity of working. Under the ADA, an individual is substantially limited in the major life activity of working if his disability disqualifies him from a class of jobs or a broad range of jobs. 29 C.F.R.

§ 1630.2(j)(3)(ii); *Bolton v. Scrivner*, 36 F.3d 939 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

According to Dr. Clary, Haysman's neurologist, Haysman was limited to sedentary work because of his physical restrictions. (Clary Deposition at 32, 44–45, 48–51). John Paul, the Vocational Rehabilitation Specialist hired by Alexis (Food Lion's servicing agent for workers comp.), stated that sedentary jobs consist of approximately 10% of all jobs in the national economy. (Paul Affidavit at ¶ 10). Thus, Haysman would be precluded from engaging in 90% of the jobs in the work force. This is enough to create a factual dispute as to whether Haysman is excluded from a broad range of jobs, so as to be considered substantially limited in the major life activity of working under the ADA. Thus, there is a question of fact as to whether Haysman is "disabled" according to the ADA.

## B. "Qualified Individual with a Disability"

Even if Haysman has a disability under the ADA, he is only entitled to ADA protection if he is a "qualified individual with a disability." In order to be a "qualified individual," Haysman must show that he can perform, with or without reasonable accommodations, the essential functions of the position in question. 29 C.F.R. § 1630.2(m).

Essential functions are the fundamental job duties of the position in question. The term "essential function" does not encompass the marginal functions of such position. 29 C.F.R. § 1630.2(n)(1).

### 1. Assistant Manager Job

Food Lion argues that Haysman was not a "qualified individual" for the assistant manager job because he could not perform the essential function of lifting 70 pounds, and because he was unable to attend work on a regular and reliable basis. The Court agrees.

The Court's first inquiry is whether the 70 pound lifting requirement of the assistant manager position is an essential function of that job. The EEOC promulgates useful guidelines for determining when a job function is essential. A function may be considered essential for any of several reasons, including, as is relevant here, the fact that there are a limited number of employees among whom the performance of the function can be distributed. 29 C.F.R. § 1630.2(n)(2)(ii); *Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1580 (N.D.Ga.1994). Food Lion argues that the 70 pound lifting requirement for the assistant manager position is an essential function of that job because the assistant manager is one of a limited number of employees available to break down trucks, build displays, or put up stock. (Defendant's Brief at 6).

Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to what is essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, (4) the consequences of not requiring the individual to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of past incumbents in the job, and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3)(i–vii).

Applying these EEOC guidelines, there is substantial and undisputed evidence that the 70 pound lifting requirement is an essential function of the assistant manager position. Obviously, it is Food Lion's judgment that this function is essential, otherwise it would not appear in the written job description for the assistant manager position as one of only five "special skills or abilities required" for that position. (*See* Constantinides Affidavit ¶ 7, and accompanying records, exhibit A). Haysman admits that he lifted heavy items *every day* when he was working as an assistant manager and that he personally unloaded and loaded stock. (Haysman Deposition at 7–8, 32). The consequences of not requiring the assistant manager to lift heavy items are that the store would be less efficient at times. (Constantinides Affidavit ¶ 7, Reynolds Deposition at 34). Food Lion states that an assistant manager will often

have to lift heavy items in order to keep the store functioning properly and must pitch in and help with stocking when the store gets behind. (Defendant's Brief at 7, Reynolds Deposition at 34). Other management level employees stated that the assistant manager had to build displays, put up stock and load and unload trucks. (Harris Deposition at 13). Indeed, Haysman admits that when he was the assistant manager he unloaded stock himself and that he was responsible for making sure that every job below his was performed, including making sure that stock was put up, and that he would have to help do those jobs when they were not getting done or someone was absent. (Haysman Deposition at 8). The current work experience of incumbents in similar jobs also shows that assistant managers are often required to lift heavy items and assist with stocking duties. (Reynolds Deposition at 21, 34). Thus, the lifting requirement satisfies all of the relevant EEOC evidentiary guidelines for determining what functions are essential.

Further, Haysman himself told Dr. Dickinson (his psychologist) that he would have to be able to lift 35-40 pounds on a fairly regular basis in order to be able to do the work of an assistant manager. (Dickinson records at 63-64). There is no evidence that Food Lion has ever waived or modified this function for other management personnel or that they could in fact do so without a detrimental effect on their operations.

Haysman argues that the lifting function is not essential, because it can often be delegated to other employees. However, the fact that a function may be delegated has minimal bearing on whether it is essential. In theory, any function may be delegated, so under Haysman's analysis, few functions would ever be essential. Further, since Haysman can *never* lift more than 10-15 pounds, he actually argues that the lifting duties of the assistant manager should be reallocated to other employees. The ADA specifically does not require an employer to reallocate essential functions. 29 C.F.R.App. § 1630.2(*o*); *Larkins,* 858 F.Supp. at 1583.

Further, when the assistant manager is required to do heavy lifting it is often because there are not enough stockers, or the stockers are not performing adequately, (Plaintiff's Deposition at 7-8, Reynolds' Deposition at 34), or because the assistant manager is the only employee present to perform the function (Constantinides Affidavit ¶ 7, Constantinides Deposition at 42). Delegation is not possible in these instances.

The undisputed evidence shows that the assistant manager often performs heavy lifting, that he is one of a limited number of employees available amongst whom this function can be distributed, and that if the assistant manager cannot perform this function when required then the store cannot function properly. Therefore, the Court finds that the 70 pound lifting requirement is an essential function of the assistant manager position.

■■■ Next, the Court must determine whether Haysman has identified a reasonable accommodation that would have enabled him to perform the essential function in question. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112 (11th Cir.1993) (Under Rehabilitation Act plaintiff must describe reasonable accommodation and exactly how it would enable him to perform essential functions).[1]

■■■ Reasonable accommodation includes modifications or adjustments to the work environment or the manner in which the position is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position. 29 C.F.R. § 1630.2(*o*)(1)(ii). Haysman argues that the lifting requirement could have been waived as a reasonable accommodation because he could perform all of the other duties of an assistant manager. However, an employer is not required to waive an essential function of a job or to reallocate those functions. 29 C.F.R. Pt. 1630 App. § 1630.2(*o*); *Larkins,* 858 F.Supp. at 1583.

---

1. Rehabilitation Act case law is applicable to ADA analysis. In the Interpretive Guidance on Title I of the ADA the EEOC states: The range of employment decisions covered by this nondiscri- mination mandate is to be construed in a manner consistent with the regulations implementing § 504 of the Rehabilitation Act of 1973.

Haysman makes no suggestion as to how the lifting requirement might be modified, or any steps which Food Lion could have taken that would have allowed him to perform the essential function of lifting. Therefore, the Court finds no genuine issue of fact as to whether there was any reasonable accommodation that would have allowed Haysman to perform the essential function of the assistant manager position that he be able to lift 70 pounds.

■ Additionally, regardless of the importance of the lifting requirement, Food Lion asserts that Haysman's sporadic and unpredictable attendance rendered him unqualified for the assistant manager position. The Court agrees: when one is not present at work, he cannot perform any of the requirements of his job, essential or otherwise. The Eleventh Circuit recently endorsed this view in a Rehabilitation Act case, holding that reasonably regular and predictable attendance is an essential function of many jobs. *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir.1994), citing *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va.1991); *Wimbley v. Bolger*, 642 F.Supp. 481, 485 (W.D.Tenn.1986).

A business should be given wide latitude in selecting its management personnel and has every right to demand reliable attendance from them. Reliable and regular attendance is an essential function of most management level jobs and certainly applies to the assistant manager position at Food Lion. The store only schedules one assistant manager at a time, and that individual is responsible for the total store in the absence of the store manager. (Constantinides Affidavit, exhibit A, Assistant Manager Job Description). He is responsible for and directly supervises other subordinate managers and their personnel. *Id.* An organization such as Food Lion cannot be required to fill such a key management position with someone who is unable to reliably be present to discharge these responsibilities.

Haysman produces no probative evidence that regular and predictable attendance is not an essential function of this position. Haysman argues only that he was not fired because of any attendance problems, and in doing so makes the sweeping statement that "there is no evidence ... that [he] was at any time disqualified from any work at Food Lion because of the number of absences." (Plaintiff's Brief at 18). However, the fact that Haysman was not fired is only relevant to whether regular and predictable attendance was an essential function of the light duty job which he held when the absences occurred. The Court finds no merit in the suggestion that not being fired from the light duty position is indicative that attendance is not essential for management level positions which Haysman did not occupy when the absences occurred. This leap of logic does not speak to the consequences, policies, or realities of absenteeism in a management position. Therefore, the Court finds that regular and predictable attendance is an essential function of the assistant manager position.

■ It is undisputed that Haysman often worked fewer hours than allowed by his restrictions, often left work early, and sometimes missed work altogether. (Byars Deposition at 41–42, Haysman Deposition at 74, Gertzweiler Deposition at 31–32, Dickinson records at 44–47, 56, 75). Tim Harris, a grocery manager for Food Lion, stated that it appeared that Haysman would just "come and go as he pleased." (Harris Deposition at 22, 31). The undisputed evidence shows Haysman was unable to consistently work a schedule designed to fit within the restrictions imposed on him by his doctors, and Haysman has failed to suggest any manner in which Food Lion could accommodate this problem in the position in question. Thus, the Court finds that Haysman could not perform the essential function of regular and predictable attendance for the assistant manager position.

Accordingly, because the Court finds that Haysman was unable to perform the essential function of lifting and was unable to attend work on the reliable and consistent basis required for the assistant manager position, Food Lion is entitled to summary judgment to the extent that Haysman claims that Food Lion violated the ADA when they refused to return Haysman to the assistant manager position.

Food Lion, citing a line of cases based on the Rehabilitation Act, erroneously suggests that our inquiry must cease here because there was no affirmative duty to reassign Haysman. However, this interpretation of the ADA conflicts with the plain language of the statute. The ADA, unlike the Rehabilitation Act, contains explicit language concerning the employer's duty to consider reassignment to a vacant position as a possible accommodation if the employee is no longer able to perform the essential functions of his original job.

The obligation to make a reasonable accommodation is a form of non-discrimination. 29 C.F.R. Pt. 1630, App. § 1630.9. Wholly apart from the essential functions of the position in question, the ADA states that a reasonable accommodation may include job restructuring, which can include reassignment to a vacant position. 42 U.S.C. § 12111(9)(b). Employers should reassign an individual to an equivalent position in terms of pay, status, etc., if the individual is qualified and the position is vacant within a reasonable amount of time. C.F.R.App. § 1630.2(o).

Thus, under the ADA, reassignment is appropriate when no accommodation would enable the plaintiff to remain in his current position, he is qualified (with or without reasonable accommodation) for another position, and that position is vacant within a reasonable time.

### 2. Reassignment to Scan Analyst or Customer Service Positions

Haysman argues that a reasonable accommodation would have been to transfer him to another full time management level position which he could have performed. Specifically, he asserts that he could have been reassigned as a "scan analyst" or "customer service manager." (Plaintiff's Brief at 2). In response, Food Lion argues that given Haysman's lifting and sedentary restrictions, there were no permanent positions available which he could have performed. (Constantinides Deposition at 34).

The Court finds that there is no genuine issue of fact as to whether Food Lion dis-criminated against Haysman by failing to reasonably accommodate him with a transfer to another management or full-time position, because regular and reliable attendance are essential to the positions in question. Alternatively, Haysman has failed to set forth evidence that there was a scan analyst position available, and the customer service manager position also has an essential lifting requirement which is beyond Haysman's limitations.

First, the scan analyst and customer service manager jobs are important management level positions, and like the assistant manager position, require regular and predictable attendance. Each store has only one scan analyst and customer service manager. When a business schedules only one person for a particular position with specific functions and important duties, it is likely that reasonable, regular and reliable attendance is an essential function of that position.

The "Duties and Responsibilities" section of the scan analyst job description states clearly: "Due to scheduling requirements, the scan analyst will be the only person in the store designated and trained to perform the duties and staffing outlined." (Constantinides Affidavit, exhibit b). Food Lion would be forced to operate with these duties wholly unperformed during periods when Haysman's disability caused him to arrive late, leave early, or miss work altogether.

There also is only one customer service manager per store, (See Constantinides Deposition at 43), and that individual is "[r]esponsible for the supervision of the Front End operations of the store and all Front End personnel," and "responsible for the total store in the absence of the Store Manager and the Assistant Manager." (Constantinides Affidavit, exhibit b—Customer Service Manager Job Description). Further, the customer service manager is often required to open the store (Constantinides Deposition at 43, Eva Cross Deposition at 17), and may be the only cashier present at that time. Again, Food Lion should not be forced to employ an individual in this position who they cannot rely upon to be present to discharge these duties.

Accordingly, the Court finds that regular and reliable attendance is an essential function of the scan analyst and customer service manager positions. As discussed above, it is undisputed that Haysman missed much work and sometimes arrived or left work at irregular and unscheduled times. Haysman has suggested no means by which Food Lion could have accommodated these absences in the positions in question. Therefore, Food Lion is entitled to summary judgment on the issue of whether they violated the ADA by failing to reasonably accommodate Haysman with a transfer to the scan analyst or customer service manager positions.

Alternatively, as to the scan analyst position, Haysman's argument also fails, because there is no admissible evidence that such position was vacant within a reasonable time. The ADA says reassignment to a *vacant* position may be a reasonable accommodation. The ADA does not require that an employer "bump" other employees, assign an individual to an occupied position or create a new position. 29 C.F.R. Pt. 1630, App. § 1630.2(*o*); *White,* 45 F.3d at 357.

Because the plaintiff has the burden of making a prima facie case, he must identify a specific accommodation, in this instance, a specific position which was available and which he could perform. *See e.g., White,* 45 F.3d at 362. John Paul, the vocational rehabilitation specialist, suggested to Food Lion that Haysman be assigned as a scan analyst (Affidavit of John Paul ¶ 13), because this position does not have a lifting requirement. However, Haysman has produced no admissible evidence indicating that there was a vacant scan analyst position available within a reasonable time after his return. John Paul merely states that it was his "understanding that there was a position in a Savannah area store for a scan analyst available at that time." (Paul Affidavit ¶ 18). There is nothing as to how Paul came to this "understanding", nor is there any other evidence whatsoever to support this hearsay.

An Affidavit in support of a motion for summary judgment "shall be made on personal knowledge and set forth such facts as would be admissible in evidence." Fed. R.Civ.Proc. 56(e). It is well established that hearsay evidence which is inadmissible at trial cannot be considered on a motion for summary judgment. *Reliance Ins. Co. v. Romine,* 707 F.Supp. 550, 551 (S.D.Ga.1989), *aff'd,* 888 F.2d 1344 (11th Cir.1989). Therefore, this statement by Paul does not create a material issue of fact because it is not based on personal knowledge and is therefore inadmissible. Accordingly, Haysman fails to establish a genuine issue of fact as to whether he could have been reasonably accommodated through a transfer to the position of scan analyst because he cannot show that such position was available.

Also, as to the customer service position, Haysman's argument is defeated by a lifting requirement far in excess of his abilities. The customer service manager position lists only four "special skills and abilities required," but one of those requirements is "the ability to bend, reach, stoop, and lift up to 40 pounds." (Constantinides Affidavit, exhibit b). According to Food Lion, this requirement exists because the customer service manager must also function as a cashier, and cashiers must be able to lift heavy items such as a bag of dog food from the bottom of a shopping cart. (Constantinides Deposition at 42, Byars Deposition at 69). It is uncontroverted that Haysman could lift only 10–15 pounds.

Haysman submits evidence that this function can usually be delegated, (See Deposition of Eva Cross at 18), but again, delegation has minimal bearing on whether a function is essential. Further, this argument fails to address the consequences of having a customer service manager who can *never* lift more than 10–15 pounds. For example, the customer service manager sometimes opens the store and is the only cashier working at that time, which makes delegation impossible. (Constantinides Deposition at 43).

Therefore, the Court finds no genuine issue of fact as to whether Food Lion violated the ADA by refusing to return Haysman to the assistant manager position, or by not reassigning him to the scan analyst or customer service position. Haysman has failed to make a prima facie showing that he was

qualified for any of these positions with or without a reasonable accommodation. Accordingly, Food Lion is entitled to summary judgment because Haysman is not a "qualified individual with a disability" with respect to these positions.

### 3. Violation of ADA in Temporary Light Duty Position

Haysman also claims that Food Lion violated the ADA because he was not "[r]easonably accommodated when, secondary to his disabled status, he was verbally harassed and physically abused by supervisory personnel in an attempt to force him to quit his job." (Plaintiff's Brief at 2). In response, Food Lion contends that Haysman's allegations of harassment are not actionable under the ADA. (Defendant's Brief at 29). Accordingly, as a threshold issue, the Court must decide whether Haysman's allegations are within the spectrum of the ADA.

### a. Harassment Claim is Actionable Under ADA

■ The Court finds that the alleged harassment is actionable under the ADA, but not under a "reasonable accommodation" analysis. Haysman does not identify some accommodation that would have enabled him to perform some essential function of the light duty job. Rather, he claims that his supervisors harassed and abused him because of his disability in an attempt to get him to quit. (Plaintiff's Brief at 25–26). These claims are best construed as allegations that Haysman was subjected to a hostile work environment, or that such environment resulted in his constructive discharge, or both. The Court finds that a plaintiff may state such a claim under the ADA.

The ADA prohibits discrimination in the "[t]erms, conditions or privileges of employment". 42 U.S.C. § 12112(a). Referring to identical language in Title VII, the Supreme Court stated: "harassment [that is] sufficiently severe or pervasive to 'alter the conditions of employment and create an abusive working environment', is actionable under Title VII because it affects a term, condition or privilege of employment." *Patterson v. Mc-Lean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989) (citation omitted). Interpreting Title VII, the Supreme Court found that the "terms, conditions and privileges" language "evinces a congressional intent to strike at the entire spectrum of disparate treatment," and that Title VII affords employees the right to work in an environment free from discriminatory intimidation and insult. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). It would seem illogical to hold that ADA language identical to that of Title VII was intended to afford disabled individuals less protection than those groups covered by Title VII. Indeed, the ADA specifically relies on the enforcement powers, remedies and procedures of Title VII sections 2000e–4, 5, 6, 8, and 9. 42 U.S.C. § 12117(a). Further, EEOC regulations to the ADA state that "it is unlawful to coerce, intimidate, threaten, *harass* or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this part." 29 C.F.R. § 1630.12 (emphasis added).

The few courts addressing harassment as a basis for an ADA claim have held that the harassment is actionable under the ADA, and have analyzed these complaints according to Title VII hostile work environment standards. *E.g., Mannell v. American Tobacco Co.,* 871 F.Supp. 854 (E.D.Va.1994); *Davis v. York Int'l Inc.,* 1993 WL 524761 (D.Md.1993); *See also Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714, 722 (D.Co.1995) (Constructive discharge under ADA turns on Title VII concepts and whether discriminatory acts foster a hostile climate that would compel a reasonable person in the employee's position to resign). Further, Title VII concepts have been applied to disability based harassment under the Rehabilitation Act. *See e.g., Easley v. West,* 1994 WL 702904 (E.D.Pa.1994); *Pendleton v. Jefferson Local Sch. Dist. Bd. of Educ.,* 958 F.2d 372, 1992 WL 57421 (6th Cir.1992). Food Lion has not cited, nor has the Court discovered, any case holding that harassment is not actionable under the ADA.

This cause of action is necessary if the ADA is to fulfill its purpose of protecting "qualified individuals with disabilities" from discrimination in the work place. A contrary

rule would have the illogical result of making an employer liable for firing a qualified individual because of a disability or its necessary consequences, while leaving untouched the unscrupulous employer who took the "safe route" by harassing a disabled individual with the intent of making him quit. Therefore, the Court will proceed on Haysman's harassment claim in accordance with the hostile work environment theory.

 Under Title VII, to state a hostile environment claim for discrimination by unlawful harassment, a plaintiff must show that the alleged harassment creates an objectively hostile or abusive work environment and that the putative victim subjectively perceives the environment to be abusive. *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The determination of whether the alleged conduct violates the ADA turns on the severity and pervasiveness of the conduct. *Id.* at —, 114 S.Ct. at 371.

 The elements of a hostile work environment claim are as follows: (1) the employee must be a member of a protected class, (2) the employee must have been subjected to unwelcome harassment, (3) the harassment must be based on the protected characteristic, (4) the harassment must have affected a term or condition of employment. *See e.g., Cross v. State of Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995) (sexual harassment).

 The Court finds that a material question of fact exists as to whether Food Lion is liable to Haysman for an abusive work environment created by Haysman's supervisors. There are questions of fact as to: (1) whether Haysman is disabled as defined by the ADA and whether he is a "qualified individual with a disability" for the light duty position, (2) whether Haysman was the victim of unwelcome harassment, (3) whether any such harassment was based on Haysman's disability, (4) whether such harassment was severe and pervasive enough to affect a "term, condition or privilege of employment" by creating an objectively hostile work environment, and (5) whether the actions of Haysman's supervisors creating such

an environment can be imputed to Defendant Food Lion.

### (i) Qualified Individual for Light Duty Position

The ADA protects a "qualified individual with a disability" from discrimination in the work place. 42 U.S.C. § 12112(a). So, to be a member of the protected class under the ADA, Haysman must be a "qualified individual with a disability." As previously discussed, there is an issue of fact as to whether Haysman is disabled under the ADA. The Court also finds that a material issue of fact remains as to whether Haysman was able to perform the essential functions of the light duty position. Thus, there is a material question of fact as to whether he is a "qualified individual with a disability" for the light duty position.

The situation regarding Haysman's light duty "greeter" position is quite different from the question of returning him to the assistant manager position or reassigning him to another management level position. Food Lion admits that it created and tailored the light duty position especially for Haysman, and designed it around his lifting and sedentary restrictions. Further, the "greeter" job was an extra position which was not counted against any department's scheduling or staffing, or counted against their productivity per scheduled hours. In effect, when Haysman was present he was a "bonus" for the store and whatever department he was helping. Accordingly, when his disabilities forced him to miss work, come late, or leave early, the store suffered no real detriment, as they would have were he in one of the management or other permanent positions. Therefore, the Court cannot say as a matter of law that Haysman's attendance problems rendered him unqualified for the light duty position.

 Food Lion is quite correct that they were not required to accommodate Haysman by creating a position for him, nor were they required to make this temporary position permanent. *See* 29 C.F.R. § 1630.2(*o* ); *White,* 45 F.3d at 357. Whatever Food Lion's motivation, they did create this light duty position for Haysman, and until Food

Lion terminated this temporary position, Haysman was entitled to the same rights under the ADA as any other covered employee. *See Taylor v. Garrett,* 820 F.Supp. 933, 939 (E.D.Pa.1993) (Under Rehabilitation Act employer may not harass worker because of his handicap, fail to accommodate his disability or otherwise discriminate against him simply because the worker is not "qualified" for a former position which has nothing to do with his current light duty work).

Because there are questions of fact as to whether Haysman is disabled under the ADA and whether he is able to perform the essential functions of the light duty position, Food Lion has failed to establish that Haysman was not a "qualified individual with a disability" under the ADA.

### (ii) Alleged Harassment

Harassment is verbal or physical conduct that has the purpose or effect of creating an intimidating, hostile, or offensive work environment. *E.g., Henson v. City of Dundee,* 682 F.2d 897, 902 (11th Cir.1982). In this case there is sufficient evidence from which a reasonable jury could find that Haysman was subjected to negative stereotyping, threats, verbal abuse and other conduct which created an intimidating and hostile environment.

Haysman alleges that the assistant manager, Mr. Reynolds, used profanity towards him and physically punched or kicked the injured parts of his body. (Haysman Deposition at 137–144, 147–149). Haysman has audio tapes which may corroborate the abusive language allegations. Tim Harris, a Food Lion grocery manager, witnessed Reynolds tell Haysman that he would "ride him until he quit." (Harris Deposition at 24). Haysman also alleges that Reynolds told him that he must work "every minute of his shift" regardless of whether he was hurting or what his doctors said. (Haysman Deposition at 158–159, 162–163). The store manager, Mr. Gertzweiler, is alleged to have berated Haysman in front of other employees. (Haysman Deposition at 66–68). Haysman alleges that he was scheduled for the most undesirable shifts. He asserts, and there is supporting evidence, that the motivation behind all of these actions was that his supervisors wanted to force him to quit. A reasonable jury could construe any or all of this behavior as hostile, intimidating or threatening. Further, when considering all of the evidence as a whole, this Court cannot say as a matter of law that these allegations are not severe and pervasive enough to create an objectively hostile work environment such as to affect a term, condition or privilege of employment.

However, even if a jury finds that Haysman was mistreated and that such harassment rose to the level of creating an objectively hostile environment, Haysman must still prove a causal relationship between the harassment and his disability. No matter how severe the abuse, Food Lion is only liable under the ADA if the harassment was because of Haysman's disability.

### (iii) Harassment Based on Disability

The Court cannot say as a matter of law that the alleged mistreatment was not based on Haysman's disability. The fact that there are no allegations that Haysman was called slurs such as "cripple," (Defendant's Brief at 29), is not dispositive. Food Lion attempts to justify any "friction" between Haysman and his supervisors as being based not on Haysman's disability, but because he "constantly complained, rarely worked his scheduled hours, overstated his physical complaints, and wanted to avoid work." (Defendant's Brief at 29). Although a jury may find these justifications valid and find for Food Lion, a jury could also infer from the evidence that these conclusory justifications are merely pretext and represent the kind of demeaning stereotypes that the ADA and other anti-discrimination laws seek to address. *See* 42 U.S.C. § 12101(a)(7) (Congressional findings on ADA that disabled individuals are subject to unequal treatment based on characteristics beyond the control of the individual and resulting from stereotypical assumptions not indicative of true capabilities).

Based on the medical evidence submitted by Haysman, a jury might find that he was in fact not overstating complaints and that his absences were the legitimate result of severe

pain. If so, a jury could infer that Food Lion personnel engaged in negative stereotyping of the disabled as people who overstate complaints, do not want to work, and "milk" or "snowball" their employers for benefits. A jury could find that Reynolds or Gertzweiler acted on this stereotype in deciding to "ride" Haysman until he quit. Based on this possible inference, a reasonable jury could find that Haysman was harassed because of his disability.

Additionally, the justifications offered by Food Lion beg the question of whether the problems causing the alleged harassment were the direct results or symptoms of a legitimate disability of which Food Lion had notice. An employer may reprimand recalcitrant employees whether disabled or not, but an employer is not free to harass or abuse a disabled individual over the direct consequences of his disability any more than the employer is free to call him a "gimp" or other epithets.

A jury could infer from the evidence that Gertzweiler and Reynolds intended to force Haysman's departure because of behavior by Haysman which was a direct and necessary result of his injuries, and that they knew (or should have known) that such behavior was caused by Haysman's disability. The jury could then find that the harassing conduct was based on the disability.[2]

The direct consequences or symptoms of a disability may be relied on to justify a determination that an individual is not qualified for the position in question, but they are no justification for harassment. Assuming that Haysman's absences and alleged complaints were the legitimate and direct result of a disability, Food Lion was free to fire Haysman if those problems prevented him from performing (with or without reasonable accommodation) the essential functions of the light duty position. However, if the necessary and foreseeable consequences of Haysman's disabilities did not disqualify him from the job, then Food Lion is not free to harass Haysman in an attempt to get him to quit, solely because of those same consequences. If the individual is "qualified" despite his disability and its consequences, then the employer must attempt to accommodate the individual's disability, not harass him because of it. Therefore, Food Lion's offered justification for the alleged harassment does not suffice, for the purposes of summary judgment, as conclusive evidence that such harassment was not based on Haysman's disability.[3]

In short, there is evidence from which a jury could find that Food Lion's justifications for the "friction" are pretextual, or are themselves veiled discrimination. A jury could find that Reynolds and Gertzweiler stereotyped Haysman because of his disability and acted on their stereotypical characterization by trying to force him to resign. Alternatively, a jury could find that Haysman was harassed because his supervisors wanted him to quit because of direct consequences of his disability, and that they knew (or should have known) that Haysman's behavior was a direct and unavoidable consequence of his disability. If such were the case, then the jury would be justified in finding that Haysman was harassed on the basis of disability.

### (iv) Harassment Affecting "Term or Condition" of Employment

Haysman alleges that the harassment was so severe that his psychological well-being

---

**2.** There is case law support for this approach under the Rehabilitation Act. Courts have held that an employer relies on handicap when it justifies adverse action based on conduct caused by the handicap, and an employer does not rely on handicap when it can point to behavior not causally related to the handicap. *See e.g., Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 516 (2nd Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992); *Hindman v. GTE Data Services, Inc.,* 1994 WL 371396 (M.D.Fla.1994).

**3.** This method of establishing causation is not a form of strict liability, nor does it expose employers to an enormous sphere of potential liability. First, the employer must have knowledge of the disability. *See e.g., Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928 (7th Cir.1995). Second, the causal connection between the disability and the consequences relied on must be direct rather than remote. *See Id.* at 933 n. 6. The disabled individual may not prevail merely by showing in hindsight that the actions relied on by the employer bore some minimal "but for" connection to the disability. Further, the employer may justify its action by pointing to reasons for its action which are unrelated to or remote from the individual's disability.

deteriorated to the point where Dr. Dickinson was forced to "totally disable" him from working at Food Lion. This could constitute a constructive discharge, which certainly affects a "term or condition of employment."

 In a constructive discharge claim, the plaintiff must show that he was subjected to working conditions so intolerable that a reasonable person in his condition would be compelled to resign. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989). A constructive discharge can occur when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation. *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905 (11th Cir. 1988). In *Huddleston,* the court stated that if the intolerable working conditions were the result of sexual harassment, then the constructive discharge violates Title VII. Similarly, in the case at bar, Haysman claims that he was subjected to harassment secondary to his disability because his supervisors wanted to force him to quit. This Court finds that such allegations, if true, are a violation of the ADA.

 Further, even if Haysman failed to prove constructive discharge, he could still possibly recover on the hostile environment theory. *See Huddleston,* 845 F.2d at 905. The plaintiff does not have to show "tangible" or "economic" loss if a jury finds that the harassment was so severe as to subject him to disparate treatment with respect to the terms or conditions of employment. *See Patterson,* 491 U.S. at 180, 109 S.Ct. at 2374; *Huddleston,* 845 F.2d at 905. That is, if the harassment is severe and pervasive enough to create a discriminatorily abusive work environment, then it is actionable. *Harris,* —— U.S. at ——, 114 S.Ct. at 370.

### (v) Respondeat Superior Liability

 Finally, Haysman must establish that Food Lion is liable for the conduct of its supervisors under agency principles. 42 U.S.C. § 12111(5)(a); *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. If the supervisor is acting as an agent, then the employer is directly liable for the offensive conduct. If the harasser is not acting as an agent, then the employer is only liable if he knew or should have known about the harassing conduct. *See e.g., Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1512 (11th Cir. 1989) (employer liability for supervisor's harassment in hostile environment race discrimination). The Eleventh Circuit has held that a supervisor acts as an agent under Title VII when he uses the authority delegated to him by the employer to harass the plaintiff. *See Vance,* 863 F.2d at 1515.

Haysman produces evidence that, among other things, his supervisors vowed to "ride him" until he quit, that he was scheduled to work undesirable hours, and that they berated and humiliated him in front of other employees. A jury could find that these actions constitute a use of delegated authority to threaten, intimidate and otherwise harass Haysman. Therefore, there is a material question of fact as to whether Food Lion can be held liable for the alleged abusive work environment created by Haysman's supervisors.

Therefore, the Court finds that material issues of fact preclude summary judgment on Haysman's claim that he was harassed by his supervisors because of his disability while he occupied the light duty job. There are material issues of fact as to whether Haysman has a disability recognized under the ADA, whether he is a "qualified individual" under the ADA, whether there was harassing conduct, whether such conduct was severe and pervasive enough to create an objectively hostile work environment, whether there was a causal connection between such conduct and Haysman's disability, and whether the alleged harassers' conduct can be imputed to Food Lion.

### 4. ADA CONCLUSION

In accordance with the above discussion, the Defendant's motion for summary judgment on the ADA claim is **GRANTED** in part and **DENIED** in part. The Court finds that as a matter of law Food Lion did not violate the ADA by refusing to return Haysman to the assistant manager position or by refusing to transfer Haysman to another full

time or permanent position, and therefore **GRANTS** summary judgment for Food Lion as to that portion of Haysman's case. The Court **DENIES** the motion for summary judgment on the issue of whether Food Lion is liable under the ADA for any harassment of Haysman in the light duty position.

### IV. GEEHC Claim

■ The Court also finds that genuine issues of material fact preclude summary judgment on Haysman's Georgia Equal Employment for the Handicapped Code (GEEHC) claim to the extent that it is based on the light duty "greeter" position.

■ The Defendant's arguments as to the GEEHC claim are the same as those for the ADA claim; that Haysman was not "disabled" and that he was not "qualified." The requirements of the GEEHC are substantially the same as those of the ADA. Under the GEEHC a plaintiff may establish a prima facie claim of disparate treatment by showing that: (1) he is a member of the protected class, (2) he meets the objective qualifications of the job, (3) he was directly or constructively terminated, and (4) there was a nexus between the termination and the handicap. *Daugherty v. MARTA*, 187 Ga.App. 864, 867, 371 S.E.2d 677 (1988) (Beasley, J. dissenting); *Shaw v. W.M. Wrigley Co.*, 183 Ga.App. 699, 700, 359 S.E.2d 723 (1987).

As discussed under the ADA analysis, Haysman's situation in the light duty position presents material questions of fact as to all of these elements.

### V. Intentional Tort Claims

Haysman seeks to hold Food Lion liable for the intentional torts of battery and intentional infliction of emotional distress. The battery and most of the alleged conduct causing the emotional distress are alleged to have been committed by Reynolds. Haysman has not filed a claim against Reynolds.

Food Lion maintains that the intentional tort claims are either barred by the exclusive remedy provisions of the Workers Compensation Act, or barred because they are based on alleged actions by employees that were outside the scope of employment.

■ The Court finds that Food Lion is entitled to judgment as a matter of law on the intentional tort claims because these claims are barred by the exclusive remedy provision of the Workers Compensation Act, OCGA 34–9–11. Under Georgia law, "[t]he rights and the remedies granted to an employee by [workers' compensation] shall exclude all other rights and remedies of such employee ... at common law or otherwise, on account of such injury ..., provided, however, that no employee shall be deprived of any right to bring an action against any third party tortfeasor, *other than an employee of the same employer....*" OCGA § 34–9–11(a) (emphasis added).

Applying these provisions in the context of intentional torts occurring on the job, Georgia courts have consistently held:

> In cases where an employee is injured in a physical altercation with another person occurring on the job but stemming from personal animosity, [his] injuries will nevertheless be considered compensable under the Workers Compensation Act if it is shown that the animosity arose from reasons related to the employee's performance of [his] work related duties.

*Baldwin v. Roberts*, 212 Ga.App. 546, 442 S.E.2d 272, *cert. denied*, 212 Ga.App. 895 (1994).

It is clear that any animosity between Haysman and Reynolds was related to Haysman's performance at work. In fact, Haysman's ADA theory is partially based on the contention that Reynolds wanted him to quit because Reynolds did not like the effect Haysman's disability had on his attendance, etc. It is not contended that Reynolds mistreated Haysman for personal reasons or because Reynolds dislikes disabled people. The fact that Reynolds may not have believed that Haysman was injured and thought he was "milking" the company with absences and light duty, and may have harassed Haysman because of this belief, may be actionable under the ADA, but it is clearly

not unrelated to Haysman's performance at work. Accordingly, Haysman's injuries, if they did occur, would be compensable under the Workers Compensation Act.[4] Therefore, Haysman's intentional tort claims for battery and emotional distress are barred by the exclusive remedy provision of the Workers Compensation Act. OCGA § 34–9–11.

Therefore, the Court **GRANTS** Food Lions motion for summary judgment on the intentional tort counts of battery and intentional infliction of emotional distress.

## VI. Conclusion

For the reasons discussed above, the Defendant's motion for summary judgment on the disability claims is granted in part and denied in part. The Court **GRANTS** the motion to the extent that Haysman claims that Food Lion violated the ADA by failing to reasonably accommodate him in the assistant manager job, or by failing to reasonably accommodate him by transferring him to another full time position. The Court **DENIES** Food Lion's motion for summary judgment on the disability claims to the extent that Haysman bases his claim on harassment in the light duty position.

The Court **GRANTS** Food Lion's motion for summary judgment on the intentional tort claims of battery and intentional infliction of emotional distress.

SO ORDERED.

---

4. As a matter of fact, Food Lion paid workers compensation benefits to Haysman after Dr. Dickinson disabled Haysman from working at Food Lion due to the emotional and mental problems brought on by the alleged harassment.