**Phyllis CAMPBELL, Plaintiff,**

v.

**WAL–MART STORES, INC., and Wanda Nixon Defendants.**

No. 01–CV–866–H(J).

United States District Court,
N.D. Oklahoma.

July 21, 2003.

Marthanda J Beckworth, Gregory D Nellis, Atkinson Haskins Nellis Holeman, Phipps Brittingham & Gladd, Tulsa, OK, for Phyllis Campbell, plaintiff.

Thomas Dunn Robertson, Karen Marie Grundy, John Edward Harper, Jr, Catherine W Hoopert, Nichols Wolfe Stamper Nally & Fallis Inc, Tulsa, OK, for Wal-Mart Stores, Inc., a foreign corporation, Wanda Nixon, an individual, defendants.

## *ORDER*

HOLMES, District Judge.

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Sam A. Joyner (Docket No. 70), which recommends that the Court deny Defendants' motion for summary judgment (Docket No. 39). On July 10, 2003, Defendants filed Defendants' Motion To Set Aside Report and Recommendation Of Magistrate, And To Grant Defendants' Motion For Summary Judgment (Docket No. 76), which the Court construes as an objection to the report and recommendation pursuant to Federal Rule of Civil Procedure 72(b).[1] Plaintiff submitted a brief in support of the report and recommendation (Docket No. 76).[2]

When a party objects to the report and recommendation of a Magistrate Judge, Rule 72(b) of the Federal Rules of Civil Procedure provides in pertinent part that:

---

1. Defendant cites to Federal Rule of Civil Procedure 72(a), which applies to non-dispositive motions. Because the report and recommendation addresses a dispositive motion, objections are properly made pursuant to Federal Rule of Civil Procedure 72(b).

2. At the hearing held July 2, 2003, the parties agreed to an expedited briefing schedule with respect to the report and recommendation. Thus, Plaintiffs submitted a brief in support of the report and recommendation, rather than a response to Defendants' objection.

[t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b).

The Court has carefully reviewed the Report and Recommendation of the Magistrate Judge, the objection by the Defendants, and the record. The Court finds that the Report and Recommendation denying Defendants' motion for summary judgment should be, and is hereby, adopted. Accordingly, the Motion For Summary Judgment of Defendants Wal–Mart Stores, Inc. and Wanda Nixon (Docket No. 39) is hereby denied, and Defendant's objection to the Report and Recommendation (Docket No. 76) is hereby overruled.

IT IS SO ORDERED.

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY ............................................1281

II. APPLICABLE LEGAL STANDARDS ...................................1282
 A. STANDARD FOR SUMMARY JUDGMENT ...........................1282
 B. AMERICANS WITH DISABILITIES ACT ("ADA") ....................1283

III. FACTUAL BACKGROUND ...........................................1283

IV. DISPUTE IN REGARD TO MATERIAL FACTS IN THIS CASE
 PRECLUDE SUMMARY JUDGMENT ....................................1285
 A. THE ARGUMENTS AND FACTUAL BACKGROUND ...................1285
 1. CLAIM AGAINST DEFENDANT WAL–MART FOR UNLAWFUL
 DISCRIMINATION AND WRONGFUL TERMINATION
 UNDER THE ADA.............................................1285
 (A) REASONABLE ACCOMMODATION ...........................1286
 (1) REFUSAL OR FAILURE TO PROVIDE REASONABLE
 ACCOMMODATION ......................................1286
 (2) FAILURE OF PLAINTIFF TO REQUEST A REASON-
 ABLE ACCOMMODATI ON AS A DEFENSE .............1287
 (3) NO REASONABLE ACCOMMODATION REQUIRED
 DEFENSE ............................................1290
 (B) HOSTILE WORK ENVIRONMENT ...........................1292
 (C) TERMINATION OF PLAINTIFF DUE TO HER
 DISABILITY................................................1294
 (1) LEGITIMATE REASON FOR TERMINATION
 DEFENSE VERSUS PRETEXT .........................1294
 (2) DEFENDANT'S ALLEGATION THAT PLAINTIFF IS
 ATTEMPTING TO CREATE A "SHAM" ISSUE OF
 MATERIAL FACT .....................................1300
 2. SUPPLEMENTAL STATE LAW CLAIMS AGAINST
 DEFENDANT NIXON ......................................1302
 (A) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS....1302
 (B) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS .......1303

V. RECOMMENDATION ................................................1303

VI. OBJECTIONS.....................................................1304

## REPORT AND RECOMMENDATION

JOYNER, United States Magistrate Judge.

Defendants, Wal–Mart Stores, Inc. ("Wal–Mart") and Wanda Nixon ("Nixon"), filed a Motion for Summary Judgment and Brief in Support on March 10, 2003. [Doc. No. 39]. In response to Defendants' Motion, Plaintiff Phyllis Campbell ("Campbell" or "Plaintiff") filed Plaintiff's Response to Defendants' Motion for Summary Judgment on April 9, 2003. [Doc. No. 47]. Defendants subsequently submitted their Summary Judgment Reply Brief on April 21, 2003. [Doc. No. 50]. Defendants also filed a Notice of Supplemental Authority May 1, 2003. [Doc. No. 55]. By minute order dated April 18, 2003, the District Court referred the Motion for Summary Judgment to the undersigned United States Magistrate Judge for Report and Recommendation. [Doc. No. 59]. The undersigned held a hearing on the motion on June 24, 2003. Plaintiff appears by and through her attorneys Marthanda J. Beckworth and Gregory D. Nellis. Defendants appear by and through their attorneys Thomas D. Robertson and Karen Grundy.

In considering a motion for summary judgment, the United States Magistrate Judge will construe the facts in the light most favorable to the non-moving party, which is the Plaintiff. Having heard the arguments of counsel, having reviewed the pleadings in the case, and having reviewed the parties' briefs and exhibits, the undersigned United States Magistrate Judge recommends that Defendants' Motion for Summary Judgment be **DENIED**. [Doc. No. 39]. The undersigned additionally finds Defendants' Motion for Summary Judgment on Plaintiff's claim against Wanda Nixon for negligent infliction of emotional distress MOOT based on the representation of Plaintiff's counsel at the hearing on June 24, 2003 that this claim is withdrawn.

## I. PROCEDURAL HISTORY

Plaintiff filed a Complaint on November 27, 2001. [Doc. No. 1]. Plaintiff subsequently filed an Amended Complaint January 10, 2002, asserting claims against Defendant Wal–Mart for unlawful discrimination and wrongful termination, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), and supplemental state law claims, pursuant to 28 U.S.C. § 1367, against Defendant Nixon for intentional infliction of emotional distress and negligent infliction of emotional distress.[1] [Doc. No. 4]. Defendant Wal–Mart filed its Answer on February 19, 2002. [Doc. No. 10]. Defendant Nixon separately filed her Answer February 19, 2002. [Doc. No. 11]. On March 10, 2003. Defendants Wal–Mart and Nixon filed a Motion for Summary Judgment. [Doc. No. 39]. Plaintiff filed her Response to Defendants' Motion for Summary Judgment April 9, 2003. [Doc. No. 47]. Defendants thereafter submitted their Summary Judgment Reply Brief April 21, 2003. [Doc. No. 50]. Defendants filed a Notice of Supplemental Authority May 1, 2003. [Doc. No. 55]. The Motion for Summary Judgment was referred to the undersigned United States Magistrate Judge for Report and Recommendation by minute order dated April 18, 2003. [Doc. No. 59].

1. Plaintiff's counsel stated at the hearing on June 24, 2003, that Plaintiff's claim for negligent infliction of emotional distress against Defendant Wanda Nixon is withdrawn.

## II. APPLICABLE LEGAL STANDARDS

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil & Gas v. FDIC*, 805 F.2d 342 (10th Cir.1986); *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 317, 106 S.Ct. 2548. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. *See also Comm. for the First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir.1992).

■ To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material fact...." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The substantive law determines which facts are material. *Id.* The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 585, 106 S.Ct. 1348. Unless the moving party can demonstrate entitlement to summary judgment, it must be denied. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

In *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir.1992), the Tenth Circuit Court of Appeals summarized the standard for summary judgment, stating:

> Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Factual disputes about immaterial matters are irrelevant to a summary judgment determination. We view the evidence in a light most favorable to the nonmovant; however, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative." The movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law.
>
> A movant is not required to provide evidence negating an opponent's claim. Rather the burden is on the nonmovant, who "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." After the nonmovant has had a full opportunity to conduct discovery, this burden falls on the nonmovant even though the evidence probably is in possession of the movant.

*Id.* at 1521 (citations and footnotes omitted).

In deciding a motion for summary judgment, a court views the evidence of record and draws all reasonable inferences therefrom in a light most favorable to the nonmoving party. *Conaway v. Smith*, 853 F.2d 789, 792 n. 4 (10th Cir. 1988). A summary judgment motion "does not empower a court to act as the jury and determine witness' credibility, weigh the evidence, or choose between competing inferences." *Gudenkauf v. Stauffer Communications, Inc.*, 922 F.Supp. 465, 468 (D.Kan.1996).

In an employment discrimination case, summary judgments are used sparingly. *See Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995). This is because discrimination claims often turn on the employer's intent. *See McCoy v. WGN Cont'l Broadcasting, Co.*, 957 F.2d 368, 370–71 (7th Cir.1992). Courts generally consider summary judgment an inappropriate vehicle to settle an issue such as intent. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994). Accordingly, summary judgment is appropriate in an employment discrimination case only when the plaintiff's evidence entirely fails to create any reasonable doubt concerning the employer's expressed lawful motive for taking adverse employment action. *See Cone*, 14 F.3d at 530; *Gudenkauf*, 922 F.Supp. at 470.

## B. AMERICANS WITH DISABILITIES ACT ("ADA")

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and 28 U.S.C. § 1343(4), an employer is prohibited from discriminating against an individual based upon his or her disability. *See* 42 U.S.C. § 12112(a).[2] A *prima facie* case for discriminatory employment termination requires that the Plaintiff prove, by a preponderance of the evidence, that: (1) she is "disabled" within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against based on her disability. *See Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir.1999). *See also Bristol v. Bd. County Commissioners, Clear Creek*, 281 F.3d 1148, 1156 (10th Cir.2002) *(vac. in part on other grounds )*; *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir.2000).

## III. FACTUAL BACKGROUND

Plaintiff Phyllis Campbell is a 38–year old white female who is deaf and legally blind. [Amended Complaint at ¶ VII, Def. Ex. B at 9–11, Deposition of Dot Britton, Pl.Ex. B at ¶ 2, Affidavit of Phyllis Campbell]. Plaintiff has not been formally diagnosed as developmentally disabled, but her mother, Dot Britton, testified that Plaintiff is unable to think, communicate, or reason at the same level as other adults her age. [Def. Ex. B at 9, Deposition of Dot Britton]. Plaintiff maintains that her reading and writing skills are extremely deficient, as evidenced by her deposition responses. [Pl.Ex. E, Deposition of Phyllis Campbell, Pl.Ex. B at ¶ 5, Affidavit of Phyllis Campbell, Pl.Ex. E, F, Associate Evaluations]. Wanda Nixon, Plaintiff's former co-worker, and a co-defendant in the present action, described Plaintiff's writing skills as "incoherent." [Pl.Ex. H at 35, Deposition of Wanda Nixon]. Plaintiff's reading skills have never been tested. Britton stated that Plaintiff is able to read the TV Guide, and that she does word search puzzles in

---

**2.** 42 U.S.C. § 12112(a) provides, in relevant part: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application, practices, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

the newspaper. [Pl.Ex. J at 11, Deposition of Dot Britton]. Plaintiff attended the Oklahoma School for the Deaf and communicates via American Sign Language ("ASL"). [Pl. Br. at 1].

Plaintiff began her employment with Defendant Wal–Mart as a janitor in 1989 and worked continually until August 2, 2000. Plaintiff began her employment at a Wal–Mart store in Oklahoma City, at which time she was living in a group home. Plaintiff was transferred to a store in Nashville, Tennessee in 1990 and to a store in Tulsa in 1992. [Def. Ex. A, Amended Complaint at ¶¶ VII and X, Def. Ex. B, Deposition of Dot Britton at 14–19, 22–25]. At the time of her discharge, Plaintiff worked at Wal–Mart Store 576, located at Memorial Drive and Admiral in Tulsa, Oklahoma, in the receiving department (also referred to as the "backroom" or "softlines"). Plaintiff's job duties entailed sorting and hanging clothes, unpacking clothes from shipping boxes, and separating hangers. [Def. Ex. E, Affidavit of Jess Chisum at ¶ 2].

Wal–Mart knew of Plaintiff's disabilities at the time she was hired. [Pl.Ex. C, Application for Employment, Pl.Ex. D, Pre-screening questionnaire]. Wal–Mart notes that Plaintiff's mother, Dot Britton, volunteered to come to the store and "translate" when needed. [Def. Ex. B at 25–27, 44, Deposition of Dot Britton, Def. Ex. E at ¶ 4, Affidavit of Jess Chisum]. However, Britton is not an interpreter, nor is she trained in ASL. [Pl.Ex. J at 17, Deposition of Dot Britton, Pl.Ex. B at ¶ 10, Affidavit of Phyllis Campbell]. Britton and Plaintiff had devised their own rudimentary style of communication. Although Britton never refused to come to Wal–Mart and "translate," her visits were only periodic, occurring approximately every two or three months, and the subject matter usually involved Plaintiff's performance evaluations. [Def. Ex. B at 27,

Deposition of Dot Britton]. Britton testified that she made the Wal–Mart management aware of the availability of interpreters through the Tulsa Speech and Hearing Association at the time Store 576 opened. Britton made this suggestion orally to a female supervisor who stated that the information would be passed on to management. [Def. Ex. B at 45, Deposition of Dot Britton, Def. Ex. D, Plaintiff's Answers to Interrogatories at 7].

In the summer of 2000, the Wal–Mart store at which Plaintiff was employed acquired a new manager. This manager instituted a number of changes, impacting the layout of the receiving area in which Plaintiff worked. [Amended Complaint at ¶ IX, Pl. Br. at 1]. Additionally, Plaintiff's co-workers, Beverly Morgan and Marzella Wilson, left their employ at Wal–Mart. These two co-workers had befriended Plaintiff and had developed an abbreviated method for communicating with Plaintiff over a period of about five years. [Pl. Br. at 1].

In late July or early August of 2000, an incident occurred between Plaintiff and her co-worker, Defendant Wanda Nixon, who had been reassigned to work with Plaintiff in the receiving department a week earlier. In reporting the incident to management, Nixon claimed that Plaintiff hit her in the back and pushed two shopping carts at her. [Def. Ex. B at 51–52, Def. Ex. J, Deposition of Nixon at 70–77]. Plaintiff disputes that she assaulted Nixon, and contends that Plaintiff had actually been subjected to repeated physical poking, prodding, pinching, slapping, and harassment by Nixon, from which, on this particular occasion, Plaintiff attempted to protect herself by pushing Nixon away from her. After the incident, Plaintiff's mother, Dot Britton, was notified and came to Store 576. [Def. Ex. B at 50–53, Deposition of Dot Britton, Def. Ex. E at ¶ 6, Affidavit of Jess Chisum].

Jess Chisum, co-manager of Store 576 handled the investigation of the incident. Chisum notified Regional Personnel Manager Sylvester Johnson about the incident. [Def. Ex. E at ¶ 7, Affidavit of Jess Chisum, Def. Ex. F at ¶¶ 2–3, Affidavit of Sylvester Johnson]. Chisum stated that his investigation uncovered a prior alleged assault by Plaintiff against co-worker Shirley Richey in about 1996 or 1997. [Def. Ex. I at ¶¶ 4–5, Affidavit of Shirley Richey, Def. Ex. E at ¶ 8, Affidavit of Jess Chisum, Def. Ex. F at ¶ 5, Affidavit of Sylvester Johnson]. Plaintiff disputes that she ever assaulted Richey, and argues that Wal–Mart used this alleged incident, for which Plaintiff was never disciplined, to bolster its unlawful termination of Plaintiff's employment and conceal its discrimination against Plaintiff.

On August 5, 2000, Defendant Wal–Mart terminated Plaintiff's employment, citing as its reason the fact that Plaintiff had been involved in a confrontation with Nixon a few days earlier. [Amended Complaint at ¶ X]. Sylvester Johnson directed Chisum to terminate Plaintiff, who did so after conferring with the manager of Store 576, Tom Baxter. [Def. Ex. E at ¶¶ 9–11, Affidavit of Jess Chisum, Def. Ex. F at ¶¶ 6–8, Affidavit of Sylvester Johnson]. Chisum proceeded to notify Plaintiff's mother of Plaintiff's termination. [Def. Ex. B at 53–54].

## IV. DISPUTE IN REGARD TO MATERIAL FACTS IN THIS CASE PRECLUDE SUMMARY JUDGMENT

Defendants assert that, because no genuine issue of material facts exist, summary judgment is appropriate in this case, and Plaintiff's claims should be dismissed. Plaintiff maintains that a genuine issue of material fact exists regarding her claims, which precludes summary judgment in this case.

### A. The Arguments and Factual Background

#### 1. CLAIM AGAINST DEFENDANT WAL–MART FOR UNLAWFUL DISCRIMINATION AND WRONGFUL TERMINATION UNDER THE ADA

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, prohibits an employer from discriminating against an individual based upon his or her disability. *See* 42 U.S.C. § 12112(a).[3] Accordingly, Plaintiff's *prima facie* case for discriminatory employment termination requires that she prove, by a preponderance of the evidence, that: (1) she is "disabled" within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability. *See Butler v. City of Prairie Village,* 172 F.3d 736, 748 (10th Cir.1999); *Bristol v. Bd. County Commissioners, Clear Creek,* 281 F.3d 1148, 1156 (10th Cir.2002) *(vac. in part on other grounds )*; *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d 492, 495 (10th Cir.2000).

■ Under the ADA, "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more

---

**3.** 42 U.S.C. § 12112(a) provides, in relevant part: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application, practices, the hir- ing, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

of the major life activities of such individual; [4]

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). As a matter of law, a court decides the issue of whether a claimed affliction constitutes an "impairment" under the ADA, and whether the identified endeavor constitutes a "major life activity." [5] *See Poindexter v. Atchison, Topeka & Santa Fe Ry., Co.*, 168 F.3d 1228, 1231 (10th Cir.1999). However, this issue need not be addressed by the undersigned because Defendants, for purposes of this motion, will concede that Plaintiff is a disabled person as defined by the ADA. [Def. Br. at 7].

The ADA defines a "qualified individual" as one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." *See* 42 U.S.C. § 12111(8). For purposes of this motion, Defendants assume that Plaintiff is qualified to perform the essential functions of her job without accommodation. [Def. Br. at 7]. Therefore, the undersigned is left to examine whether Defendant Wal–Mart discriminated against Plaintiff based upon her disability.

### (A) *Reasonable Accommodation*

Plaintiff alleges that Defendant Wal–Mart unlawfully discriminated against her and wrongfully terminated her employment, in violation of the ADA. *See* 42 U.S.C. §§ 12101, *et seq.* Defendants have moved for summary judgment, asserting that no genuine issue of material fact exists regarding Plaintiff's unlawful discrimination claim, and that Defendants are entitled to judgment as a matter of law based upon Plaintiff's failure to establish: (1) that she requested a reasonable accommodation, which was denied by Wal–Mart, or (2) that any such accommodation was required in order for Plaintiff to perform the essential functions of her job.

### (1) Refusal or Failure to Provide Reasonable Accommodation

■ In order to withstand a motion for summary judgment on a claim under the ADA, Plaintiff must present evidence that the circumstances of her discharge give rise to an inference of unlawful disability discrimination. *Walsted v. Woodbury County*, 113 F.Supp.2d 1318, 1335 (N.D.Iowa 2000). Under the ADA, "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity." *See* 42 U.S.C. § 12112(b). *See also Smith v. Midland Brake*, 180 F.3d 1154, 1167 (10th Cir.1999) (failure to reasonably accommodate an employee is a prohibited act of discrimina-

---

**4.** In order for a plaintiff to establish a disability under this subsection of the ADA, she must establish the following elements: (1) the plaintiff must have a recognized "impairment;" (2) the plaintiff must identify one or more appropriate "major life activities;" and (3) the plaintiff must demonstrate that the impairment "substantially limits" one or more of the major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

**5.** A "major life activity" is defined in the regulations as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). In addition, the appendix lists other major life activities as including, "but not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630, App. to Part 1630—Interpretive Guidance to Title I of the ADA, § 1630.2(i) (citing S.Rep. No. 116, 101st Cong., 1st Sess. 22 (1989)).

tion). Under the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), a "reasonable accommodation" includes "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed that enable a qualified individual with a disability to perform the essential functions of that position." *See* 29 C.F.R. § 1630.2(*o*)(1)(ii).

Plaintiff asserts that Wal–Mart discriminated against her in its failure to provide a reasonable accommodation for her visual and auditory disabilities. As a result of Wal–Mart's failure to accommodate her disabilities, Plaintiff claims she was isolated from her co-workers due to her complete inability to communicate with them. Additionally, Plaintiff was unable to understand or learn of changes impacting her work environment, which, in turn, affected her overall ability to perform her job as a receiving clerk.

It is undisputed that Plaintiff's disabilities (*i.e.*, deafness and legal blindness) were known to Wal–Mart at the time Plaintiff commenced her employment. In fact, Plaintiff listed these disabilities on her application for employment and pre-screening questionnaire. [Pl.Ex. C, D]. When asked about any physical or mental conditions that might limit her ability to perform her job or pose a risk to other employees, Plaintiff responded: "Deaf/Blind—but it doesn't stop me." [Pl.Ex. C].

Plaintiff argues that, despite Wal–Mart's awareness of Plaintiff's impairments, Wal–Mart discriminated against her by failing to provide a translator or interpreter trained in American Sign Language ("ASL") to communicate with Plaintiff. As a result, Plaintiff was unable to comprehend policies, procedures, and changes at Wal–Mart, and unable to communicate with her co-workers. Plaintiff notes that Wal–Mart denied requests by other employees to attend sign language classes in order to facilitate better communication with Plaintiff. [Pl.Ex. I, Pl.Ex. M at ¶¶ 5–6, Affidavit of Beverly Morgan]. Plaintiff further contends that she was denied computer training offered to her co-workers because it was determined that such training would be a "waste of time." [Pl.Ex. J at 68, Deposition of Dot Britton].

■ At the hearing, Defendants' counsel discussed Dot Britton's offer to come to Wal–Mart and "translate" when needed and alluded to the arrangement with Britton as Wal–Mart's accommodation for Plaintiff. Wal–Mart contends that once an accommodation is provided the employer's obligation ceases, and a plaintiff has no right to an accommodation of her preference. This is Wal–Mart's first assertion that it actually provided Plaintiff with an accommodation, opting until now to argue that no accommodation was requested by Plaintiff, or, in the alternative, that no accommodation was required. For the reasons discussed below, the undersigned finds that Wal–Mart's utilization of Britton's offer to "translate" does not rise to a formal accommodation provided by Wal–Mart, especially in light of Wal–Mart's knowledge that Britton is not trained in sign language, nor is she a translator. This is enhanced by the fact that Britton's visits were only periodic, and Wal–Mart relied on Plaintiff's co-worker, Beverly Morgan, to relay information to Plaintiff, including information regarding her days off.

**(2) Failure of Plaintiff to Request a Reasonable Accommodation as a Defense**

■ In determining whether a reasonable accommodation is necessary, the ADA envisions "an interactive process that requires participation by both parties." *See* 29 C.F.R. § 1630.2; *Templeton v. Neodata*

*Services, Inc.,* 162 F.3d 617, 619 (10th Cir. 1998). In the ordinary case, a defense to a claim for unlawful employment discrimination is the employee's failure to request an accommodation. *See* 29 C.F.R. Part 1630, App. ("In general, ... it is the responsibility of the individual with a disability to inform the employer than an accommodation is needed."). Thus, it is generally the employee's "initial request for an accommodation ... [which] triggers the employer's obligation to participate in the interactive process." *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 165 (5th Cir.1996). The Tenth Circuit discussed an employee's responsibility to initiate the interactive process by requesting an accommodation in *Woodman v. Runyon,* 132 F.3d 1330 (10th Cir.1997), stating:

> Without question, employees must come forward with that information they are best placed to know—the fact and nature of their disability and their wish to be accommodated. In other words, employers are not required to initiate the inquiry into whether a given employee with a disability can be accommodated....
>
> . . . . .
>
> Common sense dictates that an employee need not identify an available position for reassignment prior to enlisting the employer's assistance. In order to initiate the interactive process, it is enough for a plaintiff to notify the employer of the nature of her disability and specifically request information about possible reassignment. At that point, the employer is obligated to assist her in the effort to identify an available job.

*Id.* at 1344–45 (citing *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991)).[6]

Therefore, Defendant Wal–Mart argues that Plaintiff has failed to demonstrate that she requested a reasonable accommodation in the form of an interpreter, and that Plaintiff's failure to make such a request warrants summary judgment on her employment discrimination claim. Defendant notes that Plaintiff's mother, Dot Britton, testified that she had suggested to the Wal–Mart management at the time Store 576 opened that interpreters were available through the Tulsa Speech and Hearing Association, and that they be contacted especially if changes occurred. [Pl. Ex. J at 30, Deposition of Dot Britton]. However, Defendant asserts that Britton volunteered to personally come to Wal–Mart to "translate" for her daughter when necessary. Wal–Mart contends that Britton's "suggestion" that Wal–Mart contact interpreters did not constitute a specific request for an accommodation on behalf of Plaintiff.

Plaintiff maintains that she was never asked whether she wanted her mother to translate for her. [Pl.Ex. B at ¶ 9, Affidavit of Phyllis Campbell]. In fact, Wal–Mart was aware that Britton is not trained in ASL, nor is she a translator. [Pl.Ex. B at ¶ 10, Pl.Ex. J at 18, lines 2–12]. Instead, Britton and Plaintiff had devised a rudimentary form communication. Moreover, although Britton never refused to come to the store and translate, Britton's "translation" visits were only periodic, occurring approximately every two or three months, and the subject matter usually involved Plaintiff's performance evaluations. [Def. Ex. B at 27, Deposition of Dot Britton]. Britton was never called to perform "simultaneous" translation between Plaintiff and management. [Pl.Ex. B at

---

**6.** Although *Woodman* was a Rehabilitation Act case, the Tenth Circuit noted that "cases decided under section 504 of the Rehabilitation Act are ... applicable to cases brought

under the ADA and vice versa, except to the extent that the ADA expressly states otherwise.". *Id.* at 1339 n. 8.

¶ 10, Affidavit of Phyllis Campbell, Pl.Ex. J at 18, Deposition of Dot Britton].

Plaintiff additionally argues that, should Britton's suggestion that Wal–Mart contact interpreters not rise to the level of a specific request, Plaintiff's failure to specifically request an accommodation is not, in itself, fatal. While the onus is generally on the employee to initiate the interactive process and request a reasonable accommodation, some courts have held that "if an employee's disability and the need to accommodate it are obvious, an employee is not required to expressly request reasonable accommodation." *See Norris v. Allied–Sysco Food Serv.*, 948 F.Supp. 1418, 1436 (N.D.Cal.1996), *aff'd* 191 F.3d 1043 (9th Cir.1999). *See also* 29 C.F.R. § 1630.2(*o*)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.").

Plaintiff reiterates the fact that Defendant Wal–Mart knew of Plaintiff's impairments from the day she began working, yet failed to provide any accommodations for her in her eleven years of employment. Plaintiff contends that Wal–Mart's conduct creates a question whether it participated in "good faith" in the interactive process. "The interactive process, as its name implies, requires the employer to take some initiative." *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir.1999). Additionally, "[a] party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *See Bultemeyer v. Fort Wayne Community Sch.*, 100 F.3d 1281, 1285 (7th Cir.1996).

Plaintiff cites a Seventh Circuit case involving an employee with a mental illness who did not know how to request an accommodation. In *Walsted v. Woodbury County*, 113 F.Supp.2d 1318 (N.D.Iowa 2000), the Seventh Circuit held:

[P]roperly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say "I want a reasonable accommodation," particularly when the employee has a mental illness. The employer has to meet the employee halfway, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.

*Id.* at 1335 (citing *Bultemeyer*, 100 F.3d at 1285).

Plaintiff maintains that, while she does not suffer from a mental illness, her situation is similar to that of a plaintiff with a mental illness who has no means of communicating with her employer. Whereas an employee afflicted by mental illness may not be aware of how to request a reasonable accommodation, Plaintiff in this case was virtually unable to communicate such a request to Wal–Mart based upon her impairments and the fact that no one with whom she worked was able to communicate with her, particularly after Ms. Morgan left her job at Wal–Mart.

█ Based on the record, the undersigned recommends that the District Court **DENY** Defendant Wal–Mart's motion for summary judgment based on its defense that Plaintiff failed to request a reasonable accommodation. The undersigned finds a genuine issue of material fact as to whether the suggestion by Plaintiff's mother, Dot Britton, that Wal–Mart contact interpreters from Tulsa Speech and Hearing Association, especially if changes occurred, constituted a specific request for an accommodation for Plaintiff, triggering the interactive process and obligating Wal–Mart to participate in good faith. This issue is further compounded by the question of whether Plaintiff's disabilities, known at the outset by Wal–

Mart, were obvious to Wal–Mart such that no request for accommodation was necessary in Plaintiff's case. Furthermore, a question remains as to whether Plaintiff's circumstances, based upon her particular disabilities, are analogous to that of an employee suffering from a mental illness, preventing her from comprehending the need to request an accommodation or from exercising her ability to do so. Plaintiffs written responses to deposition questions demonstrate a very limited ability to communicate. Accordingly, summary judgment is inappropriate on this issue.

### (3) No Reasonable Accommodation Required Defense

 As an additional defense to Plaintiff's discrimination claim based on Wal–Mart's failure to accommodate, Wal–Mart asserts that no accommodation was necessary in order for Plaintiff to perform the essential functions of her assigned job. Plaintiff disputes Defendant's contention that no accommodation was required in her case.[7] The undersigned finds that a genuine issue of material fact exists as to whether Plaintiff required a reasonable accommodation to perform the essential functions of her job as a receiving clerk,

making summary judgment inappropriate on this issue.

 Generally, where an employee is able to perform the essential functions of the job to which she is assigned, the duty to accommodate does not arise, even if initiated by the employee. *See Black v. Wayne Ctr.*, 2000 WL 1033026 at *3 (6th Cir.2000). At the time of Plaintiff's termination, Plaintiff worked in Wal–Mart's receiving department. Her job duties entailed sorting and hanging clothes, unpacking clothes from shipping boxes, and separating hangers. [Def. Ex. E, Affidavit of Jess Chisum at ¶ 2]. Plaintiff's prior performance evaluations demonstrated that she met or exceeded the requisite expectations of an associate at Wal–Mart. [Def. Ex. G, Performance Evaluation]. Wal–Mart cites Plaintiff's ability to perform her job without an interpreter for eleven years as evidence that no accommodation was needed, and points to testimony by Dot Britton that the absence of an interpreter or someone with knowledge of ASL did not prevent Plaintiff from doing her job well. [Def. Ex. B at 46–47].

Plaintiff maintains, however, that her ability to successfully perform her job at

---

7. Plaintiff has submitted consent decree materials involving litigation against Wal–Mart from a district court in Arizona. Plaintiff claims that the Arizona litigation required Wal–Mart to provide a sign language interpreter for its deaf employees, install a teletype telephone for deaf applicants and employees, encode a set of training videos, and distribute information company-wide about its training of deaf employees who use sign language. [Pl. Br. at 5–7]. Defendants object to the introduction of the consent decree in the present case, noting that these materials are currently the subject of a motion in limine. [Doc. Nos. 53, 54]. The undersigned will not consider the consent decree from the Arizona litigation in deciding the motion for summary judgment in Plaintiff Campbell's case. The undersigned notes that the decree is not relevant to this analysis for several reasons.

Most significantly, Wal–Mart's draft of its consolidated ADA policy was not due to the Arizona court until March 15, 2002, some two years after the date of Plaintiff's August 2000 termination. Additional training modifications were not required to be solidified until as late as 2003. The decree's requirement of an interpreter was specific to the parties involved. Additionally, a ruling on the motion in limine is still pending. Therefore, because the facts presented in this case are sufficient for deciding Defendants' motion for summary judgment, the undersigned declines to look beyond the record to litigation in the district court of Arizona for guidance in resolving these issues. [Def. Reply Br. Ex. 2, *Damell v. Wal–Mart Stores, Inc.*, CIV 98–276 TUC WDB (D. Ariz., Order Modifying Paragraph 18 of the Original Consent Decree Filed January 6, 2000)].

Wal–Mart despite any accommodation was due, in large part, to the generosity of a few of Plaintiff's co-workers, primarily Beverly Morgan and Marzella Wilson, who actually made an effort to communicate with Plaintiff. Morgan stated that she had developed several signs used for communicating with Plaintiff. [Pl.Ex. M at ¶ 4, Affidavit of Beverly Morgan]. Morgan further stated that her numerous requests for ASL training were denied by Wal–Mart. [Pl.Ex. M at ¶ 5, Affidavit of Beverly Morgan].

Morgan had trained Plaintiff in the procedures for working in the receiving department (also referred to as the "backroom"). Morgan noted that no one from Wal–Mart's management ever attempted to communicate with Plaintiff, relying instead on Morgan to convey such information to Plaintiff as her days off. Around the time Morgan left her job at Wal–Mart, management "completely changed" the procedures and layout for the backroom without conveying these changes to Plaintiff. [Pl.Ex. M at ¶¶ 8–10, Affidavit of Beverly Morgan]. A week prior to the incident resulting in Plaintiff's discharge, and during the period in which the layout of the backroom completely changed, Defendant Nixon was reassigned to work with Plaintiff. [Pl.Ex. H at 25, Deposition of Wanda Nixon].

The undersigned finds the existence of disputed material facts regarding whether Plaintiff required a reasonable accommodation in order to perform the essential functions of her job in the receiving department. On one hand, Plaintiff had successfully performed her tasks for several years, as evidenced by her satisfactory performance evaluations. However, the evidence also indicates Plaintiff's success was attributable, at least in part, to the generosity of co-worker Morgan who, on her own initiative, attempted to communicate with Plaintiff in an abbreviated fashion. Whether Plaintiff could perform the essential functions of her job became much more tenuous once Morgan stopped working at Wal–Mart and the entire layout of the receiving department was overhauled. None of these changes were communicated to Plaintiff, not even through the "translation" of her mother, who had suggested that Wal–Mart contact an interpreter, especially in the event that changes occurred. [Pl.Ex. M at ¶ 10, Affidavit of Beverly Morgan, Def. Ex. B at 45, Deposition of Dot Britton, Def. Ex. D, Plaintiff's Answers to Interrogatories at 7]. It was during that time that Plaintiff began working with Nixon, who had no meaningful method of communicating with her other than through physical contact and gestures.

It is logical to conclude that the essential functions of Plaintiff's job encompassed not only Plaintiff's ability to sort hangers and fold clothes, but also her ability, at least on some basic level, to communicate with management and co-workers in order to comprehend the changes occurring around her. Plaintiff's contention that the purpose of a reasonable accommodation is not merely for the performance of job functions, but also to enable employees to "enjoy the privileges and benefits of employment" is well-taken. The altercation with Nixon might have been avoided with better communication.

 The undersigned finds that the interactive process envisioned by the ADA for determining whether an employee requires a reasonable accommodation, logically contemplates an ongoing, informal communicative process. *See, e.g.,* 29 C.F.R. § 1630.2(*o*)(3) ("[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation."). Once this

process is triggered, whether through an employee's request for accommodation or by virtue of the fact that a plaintiff's need for accommodation is obvious, the employer has a duty to act in good faith in responding. Despite Plaintiff's successful performance of her job in the past, Wal–Mart remained under an obligation in the interactive process to determine whether Plaintiff required an accommodation, especially when the backroom layout changed and Plaintiff's one source of communication, co-worker Morgan, stopped working at Wal–Mart. Wal–Mart argues that Britton's offer to "translate" was sufficient as an accommodation for Plaintiff. However, Britton was never contacted to relay information to Plaintiff regarding the layout and procedure changes in the receiving department.

Because a dispute of material fact exists as to whether Plaintiff required a reasonable accommodation to perform the essential functions of her job, summary judgment is inappropriate. Accordingly, the undersigned recommends that the District Court **DENY** Defendant Wal–Mart's motion for summary judgment based on its defense that no accommodation was necessary to enable Plaintiff to perform the essential functions of her job.

### (B) *Hostile Work Environment*

Plaintiff asserts she was subjected to a hostile work environment while employed at Wal–Mart. However, Plaintiff's counsel noted at the hearing that Plaintiff's hostile work environment claim is subsumed within her wrongful termination and unlawful discrimination ADA claim, and has not been pled as a separate cause of action.

In *Steele v. Thiokol Corp.*, 241 F.3d 1248 (10th Cir.2001), the Tenth Circuit noted that "[n]o federal appellate court has yet directly ruled on whether a hostile work environment claim can even be brought under the ADA. Some circuits have as-

sumed, without deciding, that such an ADA claim is cognizable." *Id.* at 1252. The *Steele* Court found it unnecessary to decide the viability of a hostile work environment claim under the ADA because the plaintiff failed to establish that he was a qualified individual with a disability under the ADA. Accordingly, any claim under the ADA "requires a plaintiff, as a threshold matter, to show 'that she is a qualified individual with a disability' as defined by the ADA." *See Kourianos v. Smith's Food & Drug Centers, Inc.*, 2003 WL 21008840 at *1 (10th Cir.2003) (citing *Steele*, 241 F.3d at 1252). Defendants have assumed, for purposes of this motion, that Plaintiff is disabled, and that Plaintiff is a qualified individual without accommodation as defined by the ADA. [Def. Br. at 7].

The ADA prohibits discrimination in the "[t]erms, conditions, or privileges of employment." 42 U.S.C. § 12112(a). In *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1106 (S.D.Ga.1995), the court analyzed the proper procedure for deciding a claim for hostile work environment under the ADA and noted the tendency to apply Title VII standards. The *Haysman* Court noted that the Supreme Court, referring to identical language in Title VII, has stated: "harassment [that is] sufficiently severe or pervasive to 'alter the conditions of employment and create an abusive working environment,' is actionable under Title VII because it affects a term, condition or privilege of employment." *Haysman*, 893 F.Supp. at 1106 (S.D.Ga.1995) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). As such, the *Haysman* Court noted that it would be "illogical to hold that ADA language identical to that of Title VII was intended to afford disabled individuals less protection than those groups covered by Title VII." *Id.* at 1106. Courts that have analyzed harassment claims under the ADA have applied the hostile work

environment standards used in Title VII claims. *Id.*

Under Title VII, a plaintiff must demonstrate that the alleged harassment created an objectively hostile or abusive work environment, and that the plaintiff, as the victim, perceived the environment to be abusive. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). "The determination of whether the alleged conduct violates the ADA turns on the severity and pervasiveness of the conduct." *Id.* at 371. *See also Jessen v. Babbitt,* 1999 WL 1246915, *2 (10th Cir.1999) ("[C]ourts must look at all relevant circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' ").

██ Upon satisfying the threshold standards of disability and qualification under the ADA, the essential elements of a claim for hostile work environment, based on an application of Title VII standards, include: (1) the employee is a member of a protected class; (2) the employee is subjected to unwelcome harassment; (3) the harassment is based on the protected characteristic; and (4) the harassment affected the terms or conditions of employment. *Haysman,* 893 F.Supp. at 1107.

Plaintiff satisfies the first prong in that she is a member of a protected class based upon her disability and status as a qualified individual under the ADA, as conceded by Defendants for purposes of this motion. [Def. Br. at 7]. As for the remaining prongs of the hostile work environment test, Plaintiff contends she was subjected to unwelcome harassment in the form of repeated touching, prodding, pinching, poking, slapping, and removal of her work station items by her co-worker, Defendant Nixon. Plaintiff asserts that this harassment was based on Plaintiff's hearing and

visual disabilities, evidenced by the fact that Nixon had no means of communicating with Plaintiff and allegedly did not want to work with Plaintiff. Finally, Plaintiff argues that the litany of physical and emotional abuses which she suffered at the hands of Nixon affected the terms and conditions of her employment, making it impossible to perform her work in the receiving department.

Defendant Wal–Mart moves for summary judgment on this claim, arguing that Plaintiff's mother, Dot Britton, testified that the only person of whom she was specifically aware that discriminated against Plaintiff was Defendant Nixon. [Def. Ex. B at 33]. Britton believed that Nixon took Plaintiff's scanner as an act of discrimination. [Def. Ex. B at 38–39]. Moreover, Wal–Mart argues that, although Nixon stated that she did not want to work with Plaintiff, this comment occurred *after* the alleged assault on her by Plaintiff. [Def. Ex. B at 32–35]. Defendant Wal–Mart maintains the record is devoid of evidence supporting Plaintiff's claim that she was harassed based on her disability.

██ Under Title VII, an employer may be liable for hostile work environment "harassment committed by one employee against another if the employer negligently or recklessly failed to respond to the harassment. 'This liability attaches when a plaintiff establishes than an employer had actual or constructive notice of the hostile work environment and failed to respond adequately to that notice.' " *See Jessen,* 1999 WL 1246915, *5 (citing *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 577 (10th Cir.1990)).

The issue thus becomes whether Wal–Mart had actual or constructive notice of its employees' allegedly harassing conduct directed toward Plaintiff, most notably the conduct of Defendant Nixon, which Plaintiff maintains created a hostile work envi-

ronment. The undersigned calls attention to the affidavits of Plaintiff and Beverly Morgan, evidencing a dispute of material fact regarding Wal–Mart's assertion that Plaintiff was not harassed based on her disability. In viewing the allegations in the light most favorable to the Plaintiff, Plaintiff's version of events gives rise to an inference that the conduct of her co-workers, primarily Defendant Nixon, constituted harassment of Plaintiff based on her disability. ˉ Such conduct undoubtedly could have impacted the terms or conditions of Plaintiff's employment. Plaintiff testified that Nixon poked her nose, pinched her face, moved things from her table, hit her on the arm, slapped her on the bottom, and was mean to her. [Pl.Ex. B at ¶¶ 16–21, Affidavit of Phyllis Campbell]. Beverly Morgan testified that "[o]ther employees teased [Plaintiff] and made fun of her because she was deaf," and that they touched Plaintiff in inappropriate and demeaning ways. Morgan also stated that Nixon was a "negative and mean" person who did not want to work with Plaintiff. [Pl.Ex. M at ¶¶ 12–14, Affidavit of Beverly Morgan].

Wal–Mart points out that neither Plaintiff nor Morgan reported this conduct to management. Plaintiff counters that, based upon her inability to communicate with anyone at Wal–Mart due to her disabilities, she was incapable of reporting the conduct of Nixon, which occurred in the week prior to the alleged assault and after Morgan had left her job at Wal–Mart. An issue also remains as to whether Wal–Mart had constructive knowledge of the conduct of other employees toward Plaintiff based upon Morgan's observations of inappropriate conduct on several occasions.

 The undersigned finds that, as member of a protected class by virtue of her disabilities, Plaintiff has submitted sufficient evidence suggesting the existence of a genuine issue of material fact whether she was subjected to a hostile working environment at Wal–Mart. The alleged harassment by her co-workers in the form of teasing Plaintiff and inappropriate physical contact based on her disabilities, along with the conduct attributed to Nixon, gives rise to an inference of unwelcome harassment based on Plaintiff's disabilities. Such harassment would undoubtedly have affected the terms or conditions of Plaintiff's employment at Wal–Mart. Accordingly, summary judgment is inappropriate on this sub-issue within Plaintiff's ADA claim.

**(C)** *Termination of Plaintiff due to her Disability*

**(1) Legitimate Reason for Termination Defense Versus Pretext**

Defendant Wal–Mart asserts that Plaintiff's employment was not terminated based on her disabilities. Rather, Defendant maintains that Plaintiff was legitimately fired for violating Wal–Mart's workforce policy prohibiting violence. Plaintiff contends that, had she not been disabled, Defendant Wal–Mart would have obtained her version of events about the incident resulting in her discharge and learned that she never assaulted Defendant Nixon. Plaintiff maintains that her termination was directly related to her disability in that: (1) Wal–Mart knew after Beverly Morgan left that Plaintiff could no longer work without a reasonable accommodation; (2) Wal–Mart no longer wanted to employ Plaintiff; and (3) As a result, Wal–Mart discharged Plaintiff without obtaining her side of the story concerning the alleged assault. Accordingly, Plaintiff argues that she was wrongfully terminated by Defendant Wal–Mart, and that Wal–Mart's proffered reason for terminating her—a violation of workforce policy—was merely pretextual. Plaintiff asserts she

has submitted sufficient direct and circumstantial evidence to create a fact question regarding the credibility of Wal–Mart's stated reason for her termination.

■ When an employer articulates a legitimate reason for an unfavorable employment decision, a plaintiff must then show, by a preponderance of the evidence, that the employer's proffered explanation was pretextual. To overcome a motion for summary judgment, the plaintiff must establish that a genuine dispute of material fact exists regarding whether the proffered reason for the challenged action is pretextual or unworthy of belief. *See, e.g., Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). The Tenth Circuit has held that pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317 (10th Cir.1999). *See also Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995) (defining pretext as "a lie, specifically a phony reason for some action").

In this case, Defendant Wal–Mart asserts that the legitimate, non-discriminatory reason for Plaintiff's termination was her violation of Wal–Mart's policy prohibiting violence in the workplace stemming from Plaintiff's alleged assault on Defendant Nixon. [Def. Ex. H, Workplace Violence Policy].[8] Wal–Mart cites 42 U.S.C. § 12113(b) of the ADA, which provides for certain employer defenses, including an employer's ability under the qualification standards to ensure that an individual does not pose a direct threat to the health or safety of other individuals in the work-

place. The Tenth Circuit has acknowledged an employer's ability to take action against an employee who poses a threat to the health and safety of others in the workplace without fear of violating the ADA. *See Den Hartog v. Wasatch Acad.,* 129 F.3d 1076, 1087 (10th Cir.1997). Therefore, Wal–Mart advances the following two arguments in support of its motion for summary judgment: (1) Plaintiff is not a qualified individual under the ADA based upon her inability to work without committing violent acts; or, (2) Even if Plaintiff is a qualified individual, Wal–Mart was permitted to discharge her based on the "direct threat" defense under the ADA. Plaintiff contends, however, that she never assaulted Defendant Nixon, and thus did not pose a "direct threat" to anyone, and that Wal–Mart's proffered reason for discharging Plaintiff was merely a pretext to discrimination.

The facts surrounding the incident for which Plaintiff was fired are clearly disputed by the parties. Around the time of the changes to the layout of the receiving department where Plaintiff worked, Defendant Wanda Nixon was reassigned to work with Plaintiff in the "backroom." In contrast to Plaintiff's previous co-worker, Beverly Morgan, who had attempted to devise a method of communication with Plaintiff, Nixon had no available means of communicating with Plaintiff other than through physical contact and gesturing. [Pl.Ex. H at 26, 36–37, 48, Pl.Ex. B at ¶¶ 16–21, Affidavit of Phyllis Campbell].

Plaintiff alleges that, in the week prior to the alleged assault on Nixon, Nixon had subjected her to repeated physical and emotional harassment. In terms of the confrontation between Plaintiff and Nixon,

---

**8.** Wal–Mart's workplace violence policy states: "Wal–Mart will not tolerate physical harassment, violence, or threats of violence, including … [s]triking, punching, slapping, pushing or assaulting another person…. Any Associate who violates this policy will be disciplined, up to and including, termination from the Company." [Def. Ex. H].

Plaintiff claims that Nixon came from behind Plaintiff, punched her on the arm, and pointed to hangers that needed sorting. [Pl.Ex. H at 52–54, 104, Deposition of Wanda Nixon]. After ordering Plaintiff to perform work that Plaintiff contends both she and Nixon were responsible for performing, Nixon left the area. [Pl.Ex. H at 54–55, Deposition of Wanda Nixon]. Upon her return, Nixon noticed that Plaintiff had not sorted the hangers, but had instead hung clothes. According to Plaintiff, this prompted Nixon to strike Plaintiff for a second time in the arm and point to the hangers. [Pl.Ex. H at 55–59, 60–61, Deposition of Wanda Nixon, Pl. Br. at 10]. Nixon then moved the shopping cart located next to Plaintiff and took Plaintiff's scanner. [Pl.Ex. J at 38].

Based on Nixon's conduct prior to the confrontation, Plaintiff was under the impression that Nixon was trying to harm her. [Pl.Ex. B at ¶¶ 16–22, Affidavit of Phyllis Campbell]. Plaintiff contends she was afraid of Nixon, wanted Nixon to "leave her alone," and merely attempted to push Nixon away from her. [Pl.Ex. B at ¶¶ 2–22, Affidavit of Phyllis Campbell, Pl. Br. at 10].

Conversely, Defendant Nixon testified that she tapped Plaintiff on the shoulder to call her attention to the hangers. After returning to the backroom where Plaintiff was working, Nixon brought a shopping cart over to her area. Nixon contends that Plaintiff then walked up behind her and struck her in the lower left side of her back with enough force for Nixon to realize that she had been hit, but not with enough force to knock her off her feet. Nixon further alleges that Plaintiff proceeded to shove two separate shopping carts in her direction, one which bumped into her as she side-stepped it, and a second as Nixon left the work area. [Pl.Ex. H at 68–75, Deposition of Wanda Nixon].

In addition to disputing Nixon's allegation of assault, Plaintiff points to the subsequent investigation of the incident performed by Wal–Mart co-manager Jess Chisum to support her argument that Wal–Mart's proffered reason for her termination was merely a pretext to discrimination. After the incident occurred, Nixon reported it to Chisum. [Pl.Ex. H at 78, Deposition of Wanda Nixon]. The record evidences some ambiguities between Nixon's report of the alleged assault and the report of Chisum. While Chisum told Regional Personnel Manager Sylvester Johnson that Plaintiff had struck Nixon in the back with sufficient force to leave a hand print, Nixon stated that she did not look at her back, nor was she bruised or hurt. [Pl.Ex. H at 71, Def. Ex. F at ¶ 2, Affidavit of Sylvester Johnson].

Plaintiff claims that no one at Wal–Mart asked for her side of the story regarding the incident, opting instead to call her mother, Dot Britton, to the store. In fact, Chisum's testimony reflects that he notified Britton, who subsequently came to the store. [Def. Ex. B at 50–53, Deposition of Dot Britton, Def. Ex. E at ¶ 6, Affidavit of Jess Chisum]. Plaintiff argues she was never asked if she wanted her mother to come to the store. [Pl.Ex. B at ¶¶ 9, 23, 26, Affidavit of Phyllis Campbell]. Moreover, the evidence in the record is unclear as to whether Plaintiff's mother actually ascertained Plaintiff's version of events or merely relied on the statements of Chisum and Nixon. Britton was unable to fully communicate with Plaintiff regarding the incident because she is not trained in sign language, and had never performed "simultaneous" translation. [Pl.Ex. B at ¶ 10, Affidavit of Phyllis Campbell].

After the incident, Nixon expressed her desire not to work with Plaintiff. [Def. Ex. B at 53, Deposition of Dot Britton]. Once Britton, Chisum, Nixon, and Plaintiff

"discussed" the incident, Britton directed Plaintiff to apologize to Nixon. Plaintiff stated that she did so because she was "sorry that [Nixon] was mad." Plaintiff then hugged Nixon, and they resumed working. [Def. Ex. J at 86–88, Pl.Ex. B at ¶ 24, Affidavit of Phyllis Campbell].

Chisum stated that, in his investigation of the incident, he learned of a prior assault committed by Plaintiff against co-worker Shirley Richey in 1996 or 1997. [Def. Ex. E at ¶ 8, Affidavit of Jess Chisum]. Richey alleges Plaintiff hit her in the back with a support belt. [Def. Ex. I at ¶ 4, Affidavit of Shirley Richey]. However, Plaintiff contends that she pushed Richey off her after Richey had grabbed her. [Pl.Ex. B at ¶ 11, Affidavit of Phyllis Campbell]. Chisum informed Regional Personnel Manager Sylvester Johnson of the alleged Richey assault, and Johnson directed Chisum to terminate Plaintiff, who did so after conferring with store manager Tom Baxter. [Def. Ex. E at ¶¶ 9–11, Affidavit of Jess Chisum, Def. Ex. F at ¶ 5, Affidavit of Sylvester Johnson]. Chisum subsequently contacted Britton and informed her of Plaintiff's termination. [Def. Ex. B at 53, Deposition of Dot Britton]. Prior to this conversation with Chisum, neither Britton nor Plaintiff had any indication that Plaintiff's job was in jeopardy over the incident. [Pl.Ex. J at 73]. In fact, Plaintiff stated that her mother told her that Chisum indicated "everything was fine." [Pl.Ex. B at ¶ 27, Affidavit of Phyllis Campbell].

Defendant Wal–Mart contends that Plaintiff's assault on Nixon constituted sufficient grounds for terminating Plaintiff's employment based upon her violation of the workforce policy prohibiting violence. However, Plaintiff disputes that she assaulted Nixon or Richey. [Pl.Ex. B at ¶¶ 11, 16–22, Affidavit of Phyllis Campbell]. Defendant notes that Plaintiff was fired by Jess Chisum and not Wanda Nix-

on, her alleged harasser. Defendant cites *Sonnier v. Computer Programs & Sys., Inc.,* 168 F.Supp.2d 1322 (S.D.Ala.2001), for its proposition that, even if Plaintiff can prove that Wal–Mart's decision to terminate her was based on erroneous information from another employee, the fact that Wal–Mart *thought* the report was accurate is the proper inquiry. *See also Guyton v. Ottawa Truck Div., Kalmar Indus., U.S.A., Inc.,* 15 Fed.Appx. 571, 577–78 (10th Cir.2001) ("The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs.").

Essentially, Wal–Mart contends that an employer has a right to be wrong in discharging an employee so long as the discharge is not based on her disability. Defendants submitted a Notice of Supplemental Authority on May 1, 2003, purportedly advancing their argument that Plaintiff was not fired based on her disability, but rather based upon her conduct. [Doc. No. 55]. Defendant brings to the undersigned United States Magistrate Judge's attention the First Circuit's decision in *Calef v. The Gillette Co.,* 322 F.3d 75 (1st Cir.2003). In *Calef,* the First Circuit noted that the ADA "does not require that an employee whose unacceptable behavior threatens the safety of others be retained, even if the behavior stems from a mental disability." *Id.* at 25–26.

The undersigned finds the facts in *Calef* distinguishable from the present case on several grounds. Therefore, despite the First Circuit's proper finding that, under the ADA, an employer is not required to retain an employee who threatens the health or safety of others, even if the employee's behavior stems from a mental disability, *Calef* does not assist the under-

signed in his analysis of the issues in the present case. First, Plaintiff Campbell's disabilities are physical, *i.e.*, deafness and legal blindness, not mental. By contrast, *Calef* involved a plaintiff who suffered from Attention Deficient Hyperactivity Disorder ("ADHD"). Although Plaintiff claims that her reading and writing skills are extremely deficient, she has not contended she suffers from any mental disorder. In her argument regarding a request for reasonable accommodation, Plaintiff merely compared her situation to that of a person suffering from a mental illness for purposes of illustrating her inability to understand how to request an accommodation or to convey such a request based upon her disability, which prevented her from communicating with her co-workers or employers.

Second, unlike Plaintiff Campbell, the plaintiff in *Calef* had been formally reprimanded on several occasions for verbal and physical altercations in the workplace. Plaintiff Campbell had never been formally coached for any misconduct prior to her termination, despite the allegation of a prior assault on Shirley Richey. Plaintiff additionally disputes the very occurrence of an assault on Defendant Nixon, which led to Plaintiff's discharge based on a violation of workforce policy. Plaintiff contends it was Nixon who assaulted her and subjected her to extreme and outrageous physical and emotional torment, magnified in light of Plaintiff's physical disabilities. Plaintiff claims she was merely protecting herself from an assault by Nixon.

Third, the First Circuit found the plaintiff in *Calef* not to be disabled, or otherwise qualified under the ADA due to his inability to perform his job, with or without accommodation, without posing a direct threat of violence to others. Plaintiff disputes Wal–Mart's contention that she is not a qualified individual under the ADA based on her inability to perform her job without committing violent acts. Again, Plaintiff had never been cited for any misconduct prior to the alleged assault on Nixon. Moreover, Plaintiff disputes that an assault on Nixon occurred, arguing instead that Plaintiff was defending herself from physical abuse by Nixon. Moreover, Plaintiff contends that had Wal–Mart made any effort at accommodating her disability, the miscommunication and subsequent incident would never have occurred. Finally, Plaintiff cites Wal–Mart's failure to inquire as to her version of events and lack of an "exit interview" as further evidence raising an inference of pretext and negating any good faith belief defense on the part of Wal–Mart that Plaintiff had violated workforce policy or posed a threat to those around her.

 Accordingly, the undersigned finds a genuine issue of material fact concerning the credibility of Wal–Mart's proffered reason for discharging Plaintiff and whether the reason given was merely pretextual. Plaintiff has created a dispute as to whether Wall–Mart, realizing Plaintiff's disabilities could no longer be ignored without accommodation, simply no longer wished to employ Plaintiff, or whether Wal–Mart discharged her based on its good faith belief that she posed a direct threat to others. Although Plaintiff was not fired by Nixon, the person she alleges harassed her, evidence in the record demonstrates a dispute as to whether the alleged assault actually occurred, or whether Plaintiff was merely attempting to protect herself from an assault by Nixon. Nixon's report of assault played a significant role in Plaintiff's termination, and questions remain regarding Nixon's motives in reporting the incident based on allegations that she did not want to work with Plaintiff and had subjected Plaintiff to repeated tormenting and ridicule in the week prior to the incident. [Pl.Ex. B at ¶¶ 16–24, Affi-

davit of Phyllis Campbell, Pl.Ex. M at ¶ 14, Affidavit of Beverly Morgan].

Additional questions remain regarding the propriety of Wal–Mart management's investigation of the incident between Nixon and Plaintiff, and Wal–Mart's motive for terminating Plaintiff. Construing the allegations in the light most favorable to Plaintiff as the non-moving party, the evidence indicates a dispute as to whether Plaintiff was ever asked for her version of the events that transpired. It is unclear whether Plaintiff's mother obtained Plaintiff's side of the story when she was called to the store or merely relied on the statements of Nixon and Chisum. [Def. Ex. B at 52, Deposition of Dot Britton]. Plaintiff was not asked if she wanted her mother to come and discuss the incident. [Pl.Ex. B at ¶ 9, Affidavit of Phyllis Campbell]. Moreover, Wal–Mart was aware that Britton is not a trained translator or interpreter, and never performed "simultaneous" translation. [Pl.Ex. J at 17–18, Deposition of Dot Britton, Pl.Ex. B at ¶ 10, Affidavit of Phyllis Campbell]. No translator was present after the incident to conduct a simultaneous translation of the discussion. The failure to provide a translator for the investigation gives additional weight to Plaintiff's failure to accommodate claim.

The investigation also raises questions as to the weight given to the alleged prior assault on Richey, which was used by Wal–Mart to bolster its reason given for discharging Plaintiff for a violation of workforce policy. As previously discussed, Richey maintains that, around 1996 or 1997, Plaintiff hit her in the back with a support belt. [Def. Ex. I at ¶ 8, Deposition of Shirley Richey]. However, Plaintiff argues that she pushed Richey off her after Richey had grabbed her. [Pl.Ex. B at ¶ 11, Affidavit of Phyllis Campbell]. No documentation is found in the record containing Plaintiff's personnel file that demonstrates Plaintiff was disciplined or formally coached or questioned about this incident by Wal–Mart management. [Pl. Ex. A, Pl.Ex. B at ¶ 13, Affidavit of Phyllis Campbell]. Yet, Defendant Wal–Mart used this prior incident to enhance its proffered reason for terminating Plaintiff—assaulting a co-worker and violating workforce policy.

Finally, Plaintiff contends that Wal–Mart's reference to an "exit interview" merely consists of a "manufactured" justification for its unlawful action because, as compared to exit interviews conducted for other employees who had been terminated, no one from management spoke to Plaintiff to obtain her side of the story or even to inform her of the reason for her termination. Instead, Chisum notified Britton about Plaintiff's termination on August 2, 2000. Chisum contends that Britton stated that "she certainly understood but did not think [Plaintiff] would understand not coming to work anymore." [Pl.Ex. B at ¶ 28, Affidavit of Phyllis Campbell, Def. Ex. E, Exit Interview, Def. Reply Br. Ex. 1, Memorandum by Jess Chisum to his attorney in anticipation of litigation dated February 12, 2001].

Plaintiff asserts she has presented sufficient direct and circumstantial evidence demonstrating a genuine issue of material fact as to the credibility of Wal–Mart's stated reason for terminating her and raising an inference that the reason given was merely pretextual. Plaintiff maintains that Wal–Mart no longer wished to employ her because of her disability when it became evident, upon Morgan's departure, that Wal–Mart could no longer ignore Plaintiff's disability without providing a reasonable accommodation. Thus, Plaintiff contends that Wal–Mart advanced an illegitimate reason for terminating her—a violation of workforce policy—based on a sham investigation that failed to solicit

Plaintiff's version of events, followed by a lack of any real exit interview.

Plaintiff cites a recent Supreme Court case, *Desert Palace, Inc. v. Costa,* —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), for her proposition that she has submitted sufficient evidence, both direct and circumstantial, that Wal–Mart's explanation for terminating Plaintiff lacks credibility and enables Plaintiff to withstand a motion for summary judgment. *Costa* involved a Title VII mixed-motive sex discrimination case in which the plaintiff was discharged after an altercation with a co-worker. The Supreme Court noted "the utility of circumstantial evidence in discrimination cases," and stated that circumstantial evidence "is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id.* at 2153–54. The Court found this particularly true in the case where the facts surrounding the incident were disputed.

■■ While the undersigned is mindful that a court's proper role is not to act as a "super personnel department" second-guessing business decisions, the undersigned finds that Plaintiff has submitted sufficient evidence to create an issue as to whether Wal–Mart fired Plaintiff based on a legitimate reason—an assault on Nixon—or, as Plaintiff contends, discriminated against Plaintiff based on her disability. *See Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1233 (10th Cir.2000). Wal–Mart is not permitted to avail itself of the "direct threat" defense to justify its termination of Plaintiff where the evidence raises questions as to its good faith belief that Plaintiff assaulted Nixon and, in turn, posed a direct threat to the safety of others. This is particularly true where the investigation into the incident is questionable. Wal–Mart's attempt to argue it had a good faith belief that Plaintiff violated policy and was permitted to fire Plaintiff even if turned out that the reason was erroneous is less persuasive because questions exist regarding Wal–Mart's motive for firing Plaintiff, which is compounded by the subsequent investigation of the incident.

Because discrimination claims often turn on the employer's intent, summary judgments are sparingly used in employment discrimination cases. *See Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir. 1995). *See also McCoy v. WGN Cont'l Broadcasting, Co.,* 957 F.2d 368, 370–71 (7th Cir.1992). Courts generally consider summary judgment an inappropriate vehicle to settle an issue such as intent. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994). Therefore, summary judgment is appropriate in an employment discrimination case only when the plaintiff's evidence entirely fails to create any reasonable doubt concerning the employer's expressed lawful motive for taking adverse employment action. *See Cone,* 14 F.3d at 530; *Gudenkauf,* 922 F.Supp. at 470. Accordingly, because the undersigned finds a genuine issue of material fact as to whether Defendant Wal–Mart's proffered reason for terminating Plaintiff constituted a legitimate, non-discriminatory reason or was merely pretextual to discrimination against Plaintiff based on her disability, the undersigned recommends that the District Court DENY Defendant's motion for summary judgment on this issue.

**(2) Defendant's Allegation that Plaintiff is Attempting to Create a "Sham" issue of Material Fact**

■■ Defendants Wal–Mart and Nixon contend that Plaintiff misstates evidence in the record to create a "sham" issue of material fact, and asks that Plaintiff's affidavit be disregarded because it contradicts her prior discovery responses. Based on the totality of evidence in the record demonstrating the existence of a genuine issue

of material fact in this case, the undersigned declines to strike Plaintiff's affidavit.

█ In determining whether an affidavit creates a "sham" issue of fact, relevant factors include: (1) whether the affiant was cross-examined during her earlier testimony; (2) whether the affiant had access to the pertinent testimony at the time of her earlier testimony, or whether the affidavit was based on newly discovered evidence; and (3) whether the earlier testimony reflects confusion, which the affidavit attempts to explain. *See Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986). *See also Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1017 (10th Cir.2002).

Defendants seek the exclusion of Plaintiff's affidavit under *Franks,* arguing that Plaintiff had the assistance of counsel in drafting her prior discovery responses, subsequently verified by Plaintiff. Defendants argue that Plaintiff did not set forth allegations that Defendant Nixon subjected her to a litany of *physical* abuses until her affidavit. Defendants maintain that the answers given by Plaintiff in her discovery responses concerning the alleged conduct of Nixon reflected no confusion requiring a clarifying affidavit. Finally, Defendants cite Plaintiff's non-responsive answers at her deposition to attack her ability to verify a multi-page document, while highlighting the testimony of Plaintiff's mother that Plaintiff reads the TV Guide and does word search puzzles.

As previously discussed, Plaintiff has not been formally diagnosed as developmentally disabled. However, Plaintiff's mother testified that Plaintiff is unable to think, communicate, or reason at the same level as other adults her age. [Def. Ex. B at 9, Deposition of Dot Britton]. Plaintiff contends that her reading and writing skills are extremely deficient, evidenced by her deposition answers and responses on her associate self-evaluation forms at Wal-Mart. [Pl.Ex. E, Deposition of Phyllis Campbell, Pl.Ex. B at ¶ 5, Affidavit of Phyllis Campbell, Pl.Ex. E, F, Associate Self–Evaluations]. Wanda Nixon described Plaintiff's writing skills as "incoherent." [Pl.Ex. H at 35, Deposition of Wanda Nixon]. Plaintiff's reading skills have never been tested. Britton did state that Plaintiff is able to read the TV Guide, and that she does word search puzzles in the newspaper. [Pl.Ex. J at 11, Deposition of Dot Britton].

Plaintiff's attorney, Gregory Nellis ("Nellis"), stated at the hearing that communicating with Plaintiff is difficult. In drafting Plaintiff's affidavit, Nellis hired an interpreter to assist in the process. Nellis contends that each statement in the affidavit was verified several times by Plaintiff via the interpreter. In contrast, no interpreter was available to Plaintiff at her deposition. Instead, Plaintiff was handed page after page of questions in large type font. Plaintiff's deposition responses are virtually unintelligible. Nellis stated that he does not view Plaintiff's affidavit as contradictory to her prior discovery responses, but rather insists that Plaintiff's affidavit simply provides more detail regarding her harassment by Defendant Nixon.

The undersigned notes that the language employed in Plaintiff's affidavit is similar to her self-evaluation responses in that they are short and read at a more elementary level. The evidence in the record indicates that Plaintiff suffers diminished reading and writing skills. Plaintiff's ability to "read" the TV Guide or do newspaper word search puzzles does not, in itself, indicate that her statement regarding deficiencies in reading and writing was disingenuous. Plaintiff's affidavit expanded upon the conduct she alleged Nixon directed toward her. Because the undersigned finds that a genuine issue of

material fact exists regarding the alleged assault culminating in Plaintiff's termination, the undersigned recommends that Plaintiff's affidavit not be stricken as an attempt to create a sham issue of fact.

## 2. SUPPLEMENTAL STATE LAW CLAIMS AGAINST DEFENDANT NIXON

Plaintiff asserts supplemental state law claims against Defendant Wanda Nixon for intentional infliction of emotional distress and negligent infliction of emotional distress.[9] Defendant Nixon argues that Plaintiff has failed to provide evidence supporting her *prima facie* case for either of these claims, entitling Nixon to judgment as a matter of law.

### (A) *Intentional Infliction of Emotional Distress*

Under Oklahoma law, a plaintiff's *prima facie* case for the tort of intentional infliction of emotional distress consists of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla. 2002); *Accord, Gabler v. Holder & Smith, Inc.,* 11 P.3d 1269, 1280 (Okla.Civ.App. 2000). *See also Breeden v. League Serv. Corp.,* 575 P.2d 1374 (Okla.1978) (adopting the standards of *Restatement of Torts (Second)* § 46 (1977)); *Brock v. Thompson,* 948 P.2d 279, 293–94 (Okla.1997) (ac-

tion for intentional infliction of emotional distress exists where extreme and outrageous conduct is coupled with severe emotional distress). The trial court is best-situated to determine the outrageousness of a defendant's conduct and the severity of a plaintiff's distress. *See Mirzaie v. Smith Cogeneration, Inc.,* 962 P.2d 678 (Okla.Civ.App.1998). For a defendant's conduct to rise to the level of extreme and outrageous, a plaintiff must prove that a recitation of such conduct to an average member of the community would solicit resentment on the part of the listener and cause that person to exclaim "Outrageous!" *See Computer Publications, Inc.,* 49 P.3d at 735.

Plaintiff asserts that the extreme and outrageous conduct of Defendant Nixon toward Plaintiff at work caused Plaintiff severe emotional distress. Plaintiff alleges that Nixon knew of Plaintiff's disabilities, yet engaged in a "campaign of abuse and harassment against ... Plaintiff." [Amended Complaint at ¶ XV]. Plaintiff claims that Nixon engaged in daily harassment tactics with the motive of undermining Plaintiff's ability to perform her job, and additionally created a hostile working environment for Plaintiff.[10] Nixon's alleged harassment tactics included moving items from Plaintiff's work station, ridiculing Plaintiff, and ordering Plaintiff to do work that was actually Nixon's responsibility. More importantly, Nixon's sole method of communicating with Plaintiff was through entirely physical contact or gesturing. Plaintiff alleges that Nixon subjected her

---

**9.** Plaintiff's counsel stated at the June 24, 2003 hearing that Plaintiff withdraws her claim for negligent infliction of emotional distress against Defendant Wanda Nixon.

**10.** At the hearing, Plaintiff's counsel noted that Plaintiff's allegation of a hostile working environment against Defendant Nixon, who is her co-worker and not her employer, is basi-

cally subsumed within her claim for intentional infliction of emotional distress against Nixon, and was not pled as a separate claim. Thus, Plaintiff's allegations of a hostile working environment against Nixon are primarily submitted to bolster Plaintiff's claim that Nixon's actions constituted extreme and outrageous conduct which caused Plaintiff severe emotional distress.

to repeated unwelcome physical contact, including pinching her cheeks, poking, slapping, patting on her the rear end, and pushing her. [Amended Complaint at ¶¶ XV, XVI, Pl. Br. at 25, Pl.Ex. B at ¶¶ 16–21, Affidavit of Phyllis Campbell, Pl. Ex. H at 26, 36–37, 48]. Plaintiff argues that she was afraid Nixon would inflict injury upon her, and contends that she never assaulted Defendant Nixon, but, in fact, pushed Nixon away from her in order to protect herself. [Pl.Ex. B at ¶¶ 16–22, Affidavit of Phyllis Campbell]. This incident culminated in Plaintiff's discharge from employment at Wal–Mart.

Plaintiff contends that Nixon's conduct caused her severe emotional distress. Moreover, Plaintiff argues that Nixon's conduct constituted extreme and outrageous behavior, especially in light of Plaintiff's physical disabilities. Plaintiff cites *Chandler v. Denton,* 741 P.2d 855 (Okla. 1987), for her proposition that unlawful physical contact or assault causing fear supports a claim for intentional infliction of emotional distress. Plaintiff further insists that the Court should consider her physical status in its determination of the outrageousness of Defendant Nixon's conduct. *See Rodebush v. Oklahoma Nursing Homes, Ltd.,* 867 P.2d 1241 (Okla.1993) (abuse of elderly nursing home patient). Plaintiff maintains that the physical torment to which she was subjected by Nixon was clearly "beyond all possible bounds of decency," especially given Plaintiff's visual and auditory impairments, and equated to extreme and outrageous conduct inflicting upon Plaintiff severe emotional distress. Beverly Morgan noted Nixon's tendency to be "very negative and mean," and stated that Nixon did not want to work with Plaintiff. [Pl.Ex. M at ¶ 14, Affidavit of Beverly Morgan].

 Defendant argues the only harassing conduct cited by Plaintiff's mother attributable to Nixon consisted of Britton's testimony that Nixon took Plaintiff's scanner, and the recitation of Nixon's statement that she did not want to work with Plaintiff after the alleged assault occurred. However, based on Plaintiff's affidavit and brief and the affidavit of Beverly Morgan, the undersigned finds a dispute of material fact as to whether Defendant Nixon acted intentionally or recklessly in her conduct toward Plaintiff, whether such conduct was extreme and outrageous given Plaintiff's disabilities, and whether the conduct caused Plaintiff severe emotional distress. Accordingly, the undersigned United States Magistrate Judge recommends that the District Court **DENY** Defendant Nixon's motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### (B) Negligent Infliction of Emotional Distress

In her Complaint, Plaintiff alternatively asserted a claim against Defendant Nixon for negligent infliction of emotional distress. Defendant Nixon moved for summary judgment on Plaintiff's negligent infliction of emotional distress claim, arguing that Plaintiff has failed to identify a duty on the part of Nixon, or, in the alternative, that Plaintiff has failed to demonstrate that Nixon subjected her to any harassment. At the hearing June 24, 2003, Plaintiff's counsel stated that Plaintiff withdraws her claim for negligent infliction of emotional distress against Defendant Nixon. Accordingly, the undersigned finds that Defendants' motion for summary judgment on Plaintiff's claim for negligent infliction of emotional distress is **MOOT**.

### V. RECOMMENDATION

The United States Magistrate Judge recommends that the District Court **DENY** Defendant Wal–Mart's Motion for Summary Judgment based upon the exis-

tence of a genuine issue of material fact concerning Plaintiff's claims for unlawful discrimination and wrongful termination under the ADA against Wal–Mart. Additionally, the undersigned recommends that the District Court **DENY** Defendant Wanda Nixon's Motion for Summary Judgment based on the existence of a genuine issue of material fact in Plaintiff's supplemental state law claim against Nixon for intentional infliction of emotional distress. The undersigned finds Defendant Nixon's Motion for Summary Judgment on Plaintiff's claim against her for negligent infliction of emotional distress **MOOT**. [Doc. No. 39].

## VI. OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).